B. R. LIGNOSKI FOR THE USE OF ANDREW L. O'BRIEN, APPELLANT, VS. ELIZA A. BRUCE, APPELLEE.

1. Where the husband sues for the recovery of the separate property of the wife, which is secured to her by the "married woman's law," she must be joined as a co-plaintiff.

2. A married woman cannot maintain an action at law, in her own name and alone, for the recovery of her separate property secured to her by the statute. *Quere.*—If the husband has abandoned her or obstinately refuses to join her?

This case was decided at Tallahassee.

Appeal from Leon Circuit Court.

B. R. Lignoski instituted an action of assumpsit for the use of A. L. O'Brien on a promissory note executed by the appellee to Caroline M. Lignoski, of which the following is a copy:

"On or before the first day of January next, I promise to pay to Caroline M. Lignoski, or order, five hundred dollars, for value received, with eight per cent. interest from date.                                         ELIZA A. BRUCE.

"July 30th, 1855."

The declaration alleged that the defendant "made her promissory note in writing and delivered the same to Caroline M. Lignoski, then and now a married woman and wife of the said B. R. Lignoski, and thereby promised to pay to the said Caroline M. Lignoski, or order," &c., without alleging any endorsement of said note by Caroline M. Lignoski.

The defendant demurred to the declaration, upon the ground that the action was not maintainable in the name of B. R. Lignoski, and, the Court below sustaining the demurrer, plaintiff appealed.

*D. P. Hogue* for appellant.

*Archer & Papy* for appellee.

DuPONT, J., delivered the opinion of the Court.

This was an action of assumpsit by the appellant, for the use of Andrew L. O'Brien, against the appellee as maker of a promissory note, payable to Caroline M. Lignoski, (the wife of the plaintiff,) "or order." The note was not transferred by *indorsement*, and hence the allegation "for the use," &c. There was a *demurrer* to the declaration, upon which judgment was given for the defen-

dant in the Court below, and the appeal is from that judgment.

The only question arising upon this demurrer is as to the right of the husband under the provisions of our statute, passed for the protection of the rights of "married women," to maintain the action *in his own name*. The other question argued by the counsel for the appellee, viz: the legality of the transfer of the note to O'Brien, does not arise in this state of the case, and we are to deal with the question as though the recovery was for the benefit of the wife. What change our statute has made in this respect can be seen only by a critical examination of its several provisions. The act was passed March 6th, 1845, and is as follows:

"SEC. 1. Hereafter, when any female, a citizen of this State, shall marry; or, when any female shall marry a citizen of this State, the female being seized or possessed of real or personal property, her title to the same shall continue separate and independent and beyond the control of her husband, notwithstanding her coverture, and shall not be taken in execution for his debts: *Provided*, *however*, That the property of the female shall remain in the care and management of her husband.

"SEC. 2. Married women may hereafter become seized or possesssd of real or personal property, during coverture, by bequest, devise, gift, purchase or distribution, subject, however, to the restrictions, limitations and provisions contained in the foregoing section.

"SEC. 3. Any married woman having separate and independent title to property under and by virtue of this act, shall not be entitled to sue her husband for the rent, hire, issues, proceeds or profits of said property; nor shall

the husband charge for his management and care of the property of the wife.

"Sec. 4. The husband and wife shall join in all sales, transfers and conveyances of the property of the wife, and the real estate of the wife shall only be conveyed by the joint deed of the husband and wife, duly attested, authenticated and admitted to record, according to the laws of Florida regulating conveyances of real property."

These are the only provisions of the statute which would seem to bear upon the question under consideration. By a careful examination, it will be perceived that the husband's relation to the property is affected only so far as the *title* is concerned. *That* is secured to the wife, but the *care and management* of the property stands as it did at common law. He is to have the "care and management" of it, free of any *charge* therefor and *without account* to the wife for the "rent, hire, issues, proceeds or profits" of the same. Charged as he is with the "care and management," which clearly implies the *custody and possession* of the property, the logical conclusion is that he must be invested with the right to use such means as may be necessary and proper to obtain that possession. In this view of the act, we are of the opinion that the *appropriate remedies* of the common law are not affected by the statute, but that they remain as they were before its passage. He is the *statutory trustee* of the property, with qualified powers, holding it for the wife as the *beneficiary*.

The rule by which to determine when and in what cases the wife shall be joined as a co-plaintiff with the husband is very clearly and definitely laid down in the old books, however it may have been departed from in some modern decisions. In Bacon's Abridgment (Tit. Baron & Feme K.,) it is laid down that "in those cases where the debt or

cause of action will *survive* to the wife, the husband and wife are regularly to join in the action."

Mr. Chitty says: "And it is a general principle that that which the husband may discharge alone and of which he may make disposition to his own use, for the recovery of *this* he may sue without his wife." The converse of the proposition is clearly implied, that if it be a demand which he may *not* discharge alone, or of which he may *not* make disposition to his own use, for the recovery of such demand the wife *must* be joined. The same author goes on to remark: "As mere *choses in action* of the wife do not by the marriage vest absolutely in the husband until he reduces them into possession, and if not reduced into possession, she would take them by *survivorship*, in general, he cannot sue alone."—1 Chitty's Pleading, 32–3, marginal.

In Clapp vs. Inhabitants of Stoughton, it is said: "The true rule is, that in all cases where the cause of action by" law *survives* to the wife, the husband cannot sue alone. 10 Pick. Reps., 463.

The common law *test*, then, as to the capacity of the husband to sue alone, seems to rest upon *the right of survivorship in the wife.* This being established, it follows of course that as the *title* to the property is secured to her by the statute, and totally absolved from his marital rights, she must be joined as a co-plaintiff with him in all actions which he may bring for the recovery of her separate property.

It was contended, however, by the counsel for the appellee, that the action should have been *in the name of the wife alone*, and the argument was pressed that to give to the husband the right of recovery would be to jeopard the interest of the wife. We reply, that her interest will be in no greater danger under this ruling than it is under a "*set-*

*tlement*" in which a trustee is specially appointed, or in a case where the husband becomes the trustee by operation of law in the absence of a special appointment. The Court of Equity is always open for the protection of trust property, and in the case before us, if there has been a transfer of the note against the consent and wishes of the wife, or, should she apprehend a misappropriation of the proceeds when recovered, upon a proper application on her behalf, that Court would promptly interpose for the preservation and protection of her rights.

We are inclined to look upon these enactments as highly beneficial to society. In this age of extravagant and often reckless speculation, when fortunes are won and lost in a day, surely something should be done to protect the innocent and the helpless, and we can conceive of no surer means of bringing these enactments into disrepute and of ultimately effecting their repeal and total abrogation than by pushing them to extremes. It is revolting to the sentiments of a refined people that the law should be so interpreted as to set up an "*imperium in imperio*" and thus subvert the foundation of the matrimonial relation. The entire independence of the wife as a suitor in the public tribunals, besides its revolting indelicacy, would doubtless become the fruitful source of discord in the family and engender dissensions for which no protection of her interests would afford any adequate compensation. The legislation of our State on this subject, we think, has struck the happy mean between the extreme exactions of the common law and the demoralizing radicalism of "woman's rights." Whether an abandonment by the husband, or an obstinate refusal on his part, would authorize the wife to sue by *prochien ami*, we do not decide.

Several of the States have, within a few years back,

legislated on this subject, and if there had been any degree of uniformity observed in their respective enactments, their judicial interpretations might have mutually served as *precedents* to each other. But such has not been the case. In New York, for instance, their acts of 1848 and 1849 go so far as to give the wife the *exclusive* control of the property and of the rents, issues and profits thereof, and also authorizes her to alienate and dispose of the same entirely independent of the concurrence of the husband; and, as if with a design to put the intention of the Legislature beyond dispute, it is provided in the latter act that property settled on the *feme covert* by *deed of trust* shall be conveyed and given up to her by the trustee " on her written application, accompanied by a certificate of a Justice of the Supreme Court that he has examined the condition and situation of the property and made due enquiry into *her capacity to manage and control the same.*" In that State, the existence of the husband is totally ignored, and it is not at all strange that, under these provisions of their statute, the Supreme Court should have held to the capacity of the wife to sue *alone* in a Court of law for the recovery of any portion of her property.— *Vide* Smart vs. Comstock, 24 Barb. S. C. Reps., 411.

The same doctrine is held in Alabama, but the right to sue alone is expressly given by section 2,131 of the Code. In the case of Pickens and wife vs. Oliver, the Court say: " Unaided by the provisions of the Code, the right which a married woman has in her separate estate cannot be regarded or enforced in her name in a Court of law. The trustee named in the instrument, if one is named, or, if none be named, her husband holds and asserts the legal title."—Pickens and wife vs. Oliver, 29 Ala. Reps. N. S., 528; Gibson vs. Marquis and wife, *ib.*, 668.

We have not been able to find that the question as to the capacity of the wife to maintain an action at law has ever been mooted in the Courts of Mississippi, where there is a statute similar in its provisions to ours. That she may *not be sued* upon her contracts in a Court of law has been fully settled in the adjudications of that State.

Let the judgment of the Court below, sustaining the demurrer to the plaintiff's declaration, be affirmed with costs.