ANDERSON *v.* WATT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF FLORIDA.

No. 138. Argued January 8, 1891. — Decided March 2, 1891.

Since the passage of the act of March 3, 1875, 18 Stat. 470, if it appear from the pleadings and proofs, taken together, that the defendants are citizens of the United States, and reside, in the sense of having their permanent domicil, in the State of which the complainants are citizens, (or that each of the indispensable adverse parties is not competent to sue or liable to be sued therein,) the Circuit Court cannot maintain cognizance of the suit; and the inquiry is determined by the condition of the parties at the commencement of the suit.

The husband of a married woman is a necessary party in Florida to a suit in equity to foreclose a mortgage upon real estate owned by her there; and although he be not named in the bill as defendant he may appear at the hearing with the consent of all parties, and in this case the objection of want of consent cannot be taken.

The place where a person lives is taken to be his domicil until facts adduced establish the contrary.

A domicil, once acquired, is presumed to continue until it is shown to have been changed.

The domicil of the husband is the domicil of his wife, although she may be residing in another place, and even when she may be living apart from her husband without sufficient cause.

THIS was a bill filed on the 25th day of August, 1885, by Gustavus W. Faber and James S. Watt, describing themselves as " both of the city and State of New York and citizens of the State of New York, executors of the last will of James Symington, deceased, late of the State of New York," as such executors, against " J. C. Anderson, of Orlando, Orange County, Florida, a citizen of the State of Florida, as the administrator of Edward J. Wilson, deceased, and Thomas Emmett Wilson and Sarah J. Davis, both of Sylvan Lake, Orange County, Florida, citizens of the State of Florida," for the foreclosure, by sale of the property, of a mortgage given by Edward J. Wilson to James Symington, August 28, 1875, and recorded May 3, 1876, on certain real estate in Orange County, Florida.

Anderson and Wilson demurred to the bill, and assigned as one of the causes of demurrer that the bill did not " sufficiently show the authority of complainants to bring this suit as the executors of James Symington, deceased." Mrs. Davis filed a verified plea, averring that the executors had been discharged, and also that she, " before and at the time of the filing of the said bill, was, and now is, under the coverture of one George W. Davis, who is still living, to wit, in the city and State of New York," and praying judgment, and to be hence dismissed.

December 26, the plea and demurrer were severally set down for hearing by the solicitors for the complainants. Copies of Symington's will, the proofs on its presentation for probate, the order admitting to probate, and the letters testamentary, duly exemplified, were subsequently filed, and the demurrer overruled. Defendants Anderson and Wilson answered March 15, 1886, setting up a homestead entry of the

land, possession, improvement, commutation and payment by one Earnest; the conveyance by him to E. J. Wilson by deed dated March 15, 1871, and recorded November 28, 1876; deed of E. J. Wilson of one-half for a valuable consideration, to Thomas E. Wilson, May 22, 1871, recorded September 11, 1875; actual possession by Thomas E. and his grantee from May 22, 1871, to the present time; issue of the patent April 10, 1875, to E. J. Wilson, recorded November 24, 1879; large advances by Thomas E. prior to the Symington mortgage, for the benefit of the land, in excess of his share; and valuable improvements made thereon by himself and his grantee.

The answer further averred that E. J. Wilson, who resided in New York, died there in April, 1876; that the taxes upon the undivided half interest belonging to E. J. Wilson's estate were not paid for the years 1876 and 1877; that the heirs and devisees would have nothing to do with the affairs of the estate, and Symington took no steps and made no sign; that the undivided half was sold January 8, 1878, for the taxes, and defendant Thomas E. became the purchaser and received a deed January 16, 1879, as by statute prescribed, which was duly recorded that day; that he and his grantee had remained in full, quiet and peaceable possession of said undivided half from thence hitherto, and no suit had been commenced to set aside said tax deed or recover possession; and that the statutory bar was complete.

It was further alleged that on the 13th of October, 1879, defendant Wilson sold the land to Sarah J. Davis, wife of George W. Davis, of the city of New York, for $8000, $2000 cash and $6000 on time, secured by a mortgage back, and conveyed it to her by warranty deed in fee simple, which deed was recorded November 24, 1879. Defendant Wilson further answered that Mrs. Davis immediately went into the actual possession of the land, and had continued in such possession from thence hitherto; and made improvements upon the property to the amount of over $20,000.

Certain assignments of the purchase-money mortgage to Mary F. Wilson, of New York, in January and June, 1884, and duly then recorded, were set forth, as well as a mortgage,

by Mr. and Mrs. Davis, to D. Appleton & Co., made and recorded in 1884.

May 3, 1886, an answer, sworn to by defendant Sarah J. Davis, entitled as " the answer of Sarah J. Davis and George W. Davis, her husband, two of the defendants above named, to the bill of complaint exhibited against them by the complainants," signed by " def'ts' sol's," and purporting throughout to be by " these defendants," was filed in the case. This set out the circumstances under which the purchase from Thomas E. Wilson was made, the consideration, the possession and improvement of the land, and that by virtue of the conveyance to her and her adverse possession she had acquired absolute title.

Replications were filed and proofs taken; and on December 20, 1886, the court ordered that the bill be amended by striking out from the address the words " Gustavus W. Faber and James S. Watt, both of the city and State of New York and citizens of the State of New York," and inserting therein as follows: " Gustavus W. Faber, of the city and State of New York and a citizen of the State of New York, and James S. Watt, a subject of the Kingdom of Great Britain, temporarily residing in the city of New York." It was further ordered that " it appearing to the court that letters testamentary on the estate of James Symington, deceased, heretofore issued to Gustavus W. Faber, deceased, one of the complainants herein suing as one of the executors of James Symington, deceased, have been revoked, as is shown by a duly exemplified copy of the records of the surrogate court of the county of New York, State of New York, filed herein, it is therefore ordered, adjudged and decreed, on motion of complainants herein, that this cause proceed in the name of the said James S. Watt, sole surviving executor of James Symington, deceased, and that it be discontinued as to said Gustavus W. Faber, suing as co-executor." The exemplified copy of the record referred to was filed in the court, with the amendment, December 21, and showed that on the 4th of May, 1886, Faber filed a petition in the office of the surrogate for the county of New York for a decree revoking the letters testamentary issued to him, and that the order of revocation was thereupon entered thereon.

The cause was heard upon the pleadings and proofs, and at the hearing the respondent introduced an exemplified copy of the will of Edward J. Wilson, deceased, the proceedings on its admission to probate, and the letters testamentary issued to his executors, May 19, 1876.

January 19, 1887, a decree was entered (by the district judge holding the Circuit Court) finding: "That the defendant J. C. Anderson, as the administrator of the estate of Edward J. Wilson, deceased, and in his capacity as such administrator, is justly indebted to the complainant as the sole acting executor of the last will and testament of James Symington, deceased, in the sum of thirteen thousand ($13,000.00) dollars principal, and ten thousand eight hundred and eighty-seven $\frac{13}{100}$ ($10,887.13) dollars, interest, making in all twenty-three thousand eight hundred eighty-seven $\frac{13}{100}$ ($23,887.13) dollars, and that said complainant holds a mortgage lien to secure the said principal and interest hereby adjudicated and declared in his favor upon an undivided one-half interest in and to the following lands:" [describing them;] and decreeing a sale in default of payment. Sale having been made and reported, exceptions were filed to its confirmation, and overruled. Thereupon an appeal was perfected from the main decree and the order confirming the sale.

*Mr. J. Hubley Ashton,* for appellants.

*Mr. James Lowndes* for appellees.

I. It is assigned for error that the record does not disclose a controversy within the jurisdiction of the Circuit Court.

The original bill set forth a controversy between citizens of New York on the one hand and citizens of the State of Florida on the other. Over such a controversy the Circuit Court had jurisdiction.

The bill was amended on February 20, 1886, by striking out the allegation that the complainant Watt was a citizen of New York, and by inserting the allegation that he was a subject of the Kingdom of Great Britain, and by striking out Gustavus

W. Faber as a complainant. These amendments were simultaneous. On the face of the amended bill the controversy was between a subject of a foreign State and citizens of a State. This was a controversy within the jurisdiction of the Circuit Court. So far, therefore, as the record is concerned, the Circuit Court appeared to have jurisdiction of the suit throughout its course.

But it is argued that in point of fact the Circuit Court had not jurisdiction of the cause. In support of this view it is urged that Mrs. Davis was not a citizen of Florida at the time the action was begun.

The answer to this is, 1st, that it is not averred in the record that she was not a citizen of Florida; 2d, that it is not proved that she was not a citizen of Florida; 3d, that if it had been shown that she was not a citizen of Florida but a citizen of New York, this fact would not have defeated the jurisdiction.

(1) It was alleged in the bill that Sarah J. Davis was a citizen of the State of Florida. It was open to her to deny this fact by plea, and if the plea was sustained, the Circuit Court was without jurisdiction as the record then stood. Instead of pleading that she was not a citizen of Florida, Mrs. Davis filed a plea that her husband is still living, to wit, in the city and State of New York.

This plea is both irregular and insufficient. It is not accompanied by the certificate of counsel or the affidavit of the defendant (that it was not interposed for delay) which are required by the 31st Rule in Equity. It speaks as of its date (December 7, 1885,) and not as of the commencement of the suit (August 25, 1885.) *Mullen* v. *Torrance*, 9 Wheat. 537. Assuming the citizenship of Mrs. Davis to be in law that of her husband, the citizenship of the latter is not averred. The allegation that he is living in New York is not equivalent to an allegation that she is a citizen of New York. Residence and citizenship are not synonymous. *Robertson* v. *Cease*, 97 U. S. 646; *Everhart* v. *Huntsville College*, 120 U. S. 223; *Menard* v. *Goggan*, 121 U. S. 253. The averment that a party has a "fixed and permanent domicil" in a State is not equivalent to an averment of his citizenship in that State.

*Brown* v. *Keene*, 8 Pet. 112. There is no difference in meaning between the words " to reside " and " to live " (*i.e.*, in a place). Webster's Dictionary, *s.v.* live; Worcester's Dictionary, *s.v.* live; Century Dictionary, *s.v.* live.

(2) Inasmuch as the plea did not aver that Mrs. Davis was a citizen of New York, or that her husband was a citizen of New York, those facts were not admitted by setting down the bill for hearing.

(3) But even if it had been shown that Mrs. Davis was a citizen of New York, the jurisdiction would not have been defeated. The court had jurisdiction of the controversy, and the supposed defects could have been cured by amendment. *Conolly* v. *Taylor*, 2 Pet. 556; *Carneal* v. *Banks*, 10 Wheat. 181. This has been done. The allegation in the amended bill that Watt was a citizen of Great Britain, not having been denied, must be taken to be true.

II. It is argued that the husband of Mrs. Davis and D. Appleton & Co. are necessary parties.

(1) The 53d Rule in Equity is as follows : " If a defendant shall, at the hearing of a cause, object that the suit is defective for want of parties, not having by plea or answer taken the objection and therein specified by name or description the parties to whom the objection applies, the court (if it shall think fit) shall be at liberty to make a decree saving the rights of the absent parties." This is only the expression of the general rule of practice, that a defect for want of parties not absolutely necessary, must be expressly objected to. The non-joinder of Mr. Davis was not objected to in the pleadings and does not appear to have been objected to at the hearing. The objection comes too late.

(2) The persons named were not necessary or indispensable parties. Mr. Davis is said in argument to have a beneficial interest in the land. D. Appleton & Co. and Mary F. Wilson are said to have liens on the equity of redemption derived from Mrs. Davis. The interests so alleged are distinct and several and will not be affected by the decree.

The husband's *jus mariti* and courtesy seem to have been abolished in Florida. " Sec. 2. Hereafter, when any female, a

citizen of this State, shall marry, or when any female shall marry a citizen of this State, the female being seized or possessed of real or personal property, her title to the same shall continue separate, independent, and beyond the control of her husband notwithstanding her coverture, and shall not be taken in execution for his debts: *Provided, however,* That the property of the female shall remain in the care and management of her husband. Sec. 3. Married women may hereafter become seized or possessed of real and personal property during coverture, subject, however, to the restrictions, limitations and provisions contained in the foregoing section." Bush's Florida Digest, 1872, p. 580, act March 6, 1845. These laws destroy the husband's *estate* in the wife's land. Under the former act he was merely a bailiff, not an owner, and even this relationship to the land seems to have been abolished by the Constitution. If the husband had no interest in the land he was not a necessary, if indeed, a proper party.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Under the act of March 3, 1875, determining the jurisdiction of Circuit Courts of the United States (18 Stat. 470, 472) the objection to the jurisdiction upon a denial of the averment of citizenship is not confined to a plea in abatement or a demurrer, but may be taken in the answer, and the time at which it may be raised is not restricted. Although the averment as to citizenship may be sufficient, yet, if it appear that that averment is untrue, it is the duty of the Circuit Court to dismiss the suit; and this court, on appeal or writ of error, must see to it that the jurisdiction of the Circuit Court has in no respect been imposed upon. *Morris* v. *Gilmer*, 129 U. S. 315, 325; *Nashua Railroad* v. *Lowell Railroad*, 136 U. S. 356, 374; *Cameron* v. *Hodges*, 127 U. S. 322, 325.

As remarked in *Bernards. Township* v. *Stebbins*, 109 U. S. 341, 353, it has been the constant effort of Congress and of this court to prevent the discrimination in respect to suits between citizens of the same State and suits between citizens

of different States, established by the Constitution and laws of the United States, from being evaded by bringing into the federal courts controversies between citizens of the same State. *Shreveport* v. *Cole*, 129 U. S. 36, 44.

Although the Fourteenth Amendment declares all citizens of the United States to be citizens " of the State where they reside," yet as the jurisdiction of the Circuit Court is limited in the sense that it has none except that conferred by the Constitution and laws of the United States, and the presumption is that a cause is without its jurisdiction unless the contrary affirmatively appears, it is essential that in cases where jurisdiction depends upon the citizenship of the parties, such citizenship, or the facts which in legal intendment constitute it, should be distinctively and positively averred in the pleadings, or should appear affirmatively with equal distinctness in other parts of the record. It is not sufficient that jurisdiction may be inferred argumentatively from the averments. *Robertson* v. *Cease*, 97 U. S. 646, 649; *Brown* v. *Keene*, 8 Pet. 112, 115. It was therefore held in *Robertson* v. *Cease, supra; Continental Insurance Co.* v. *Rhoads*, 119 U. S. 237; *Menard* v. *Goggan*, 121 U. S. 253, and other cases, that the averment that the parties to a cause were "residents" in different States, respectively, was not enough. And in *Brown* v. *Keene, supra*, which was an action in the United States Circuit Court for the Eastern District of Louisiana, where the plaintiff was a citizen of the State of Maryland, that the averment that the defendant was a citizen or resident, "holding his fixed and permanent domicil in the parish of St. Charles," there being no allegation that he was a citizen of the United States, was insufficient.

Since the act of 1875, if it appears from the pleadings and proofs taken together that the defendants are citizens of the United States and reside, in the sense of having their permanent domicil, in the State of which the complainants are citizens, (or that each of the indispensable adverse parties is not competent to sue or liable to be sued, therein,) the Circuit Court cannot maintain cognizance of the suit. And the inquiry is determined by the condition of the parties at the

commencement of the suit. *Mullen* v. *Torrance*, 9 Wheat. 537; *Conolly* v. *Taylor*, 2 Pet. 556; *Crehore* v. *Ohio & Mississippi Railway*, 131 U. S. 240; *Jackson* v. *Allen*, 132 U. S. 27.

The bill in this case was properly filed in the name of the two executors under the will of Symington, the mortgagee, to whom letters testamentary had issued; McClellan's Dig. Laws Florida, c. 2, § 73, p. 97; 3 Williams on Executors, (6th Am. ed. bottom paging,) 1867; 1 Williams on Executors, 267, 687 and notes; 1 Daniell Ch. Pr. (4th Am. ed.) 226; *Rubber Co.* v. *Goodyear*, 9 Wall. 788; *Hill* v. *Tucker*, 13 How. 458. Both qualified and acted, and the question of their authority to bring the suit as executors of Symington, raised by the demurrer, was determined in their favor.

Hugh C. Wilson and Edward C. Wilson were appointed executors of and trustees under the will of Edward J. Wilson, the mortgagor, and letters testamentary issued to them, describing them as "both of Peekskill, Westchester County, New York." By the will certain legacies were bequeathed, and all the rest, residue, and remainder of the estate, both real and personal, of whatsoever nature or kind, and wherever situated, was directed to be divided into five equal shares, one of which was bequeathed and devised to Edward C. Wilson and the other four shares to Hugh C. and Edward C. Wilson, to hold upon certain trusts therein described. Neither the executors and trustees, nor the devisees, nor the heirs at law were made parties defendant to this bill.

Under the statutes of Florida it was provided that "when any person shall die leaving property in this State, and for the space of six months thereafter no person shall be appointed administrator on the estate of such deceased person, it shall be the duty of the sheriff of the county *ex officio*, to take charge of such estate, and to administer on and settle said estate, in the same manner as directed for other administrators." (McClellan's Dig. c. 2, sec. 15, p. 81.)

It is indicated by the record that J. C. Anderson was sheriff of Orange County, and it was admitted that he was duly appointed by the county court of that county administrator of the estate of Edward J. Wilson, deceased, July 20, 1885, but

not with the will annexed, although Edward J. Wilson died testate in New York, where he resided, and where his will was admitted to probate, which will conformed to the laws of Florida in the form and manner of its execution, and might have been admitted to record in the county court. McClellan's Dig. c. 200, §§ 1, 8, pp. 985, 987; *Crolly* v. *Clark*, 20 Florida, 849. Thomas E. Wilson was a citizen of Orange County, Florida, and he and Anderson, as administrator, were made defendants, together with Sarah J. Davis, to whom the property had been conveyed by Thomas E., and who had occupied it from October, 1879, to September, 1885, when the process in this case was served upon her, and had paid all taxes and made large and valuable improvements thereon. George W. Davis, her husband, was not made a party, but on the 3d of May, 1886, an answer was filed in the case, entitled "the answer of Sarah J. Davis, and George W. Davis, her husband, two of the defendants above named, to the bill of complaint exhibited against them by the complainants;" signed by solicitors for defendants; and answering for those defendants. To this answer the complainants filed their replication, entitled "replication of said complainants to the answer of Sarah J. Davis and George W. Davis, defendants," and describing the answer as that of those two. defendants. The names of all the parties defendant were not set forth in the titles of the decrees. The bond on appeal was signed by Anderson, administrator, Thomas E. Wilson, Sarah J. Davis and George W. Davis, as principals; recited that the appeal had been taken by them all; and was conditioned for the prosecution of the appeal by all.

Mr. Davis appears to have been a necessary party. McClellan's Dig. c. 150, p. 754; 1 Daniell Ch. Pr. (4 Am. ed.) 178; *Lignoski* v. *Bruce*, 8 Florida, 269; *Smith* v. *Smith*, 18 Florida, 789; *Dzialinski* v. *Bank of Jacksonville*, 23 Florida, 346; *McGill* v. *McGill*, 19 Florida, 341; *Staley* v. *Hamilton*, 19 Florida, 275; *Carn* v. *Haisley*, 22 Florida, 317. And although plaintiffs did not originally, or by amendment after answer, make him in terms a party to their bill, which would have disclosed that he was a citizen of New York, yet the effect of

what was done was such as bound him by the decree, and we think upon this record he must be held to have become such.

A person who has not been named as defendant to a bill may appear at the hearing, with the consent of all the parties to the cause, *Dyson* v. *Morris*, 1 Hare, 413, 419; *Bozon* v. *Bolland*, 1 Russ. & Myl. 69 ; and in this instance the objection of want of consent cannot be taken.

The plea which Mrs. Davis interposed under oath, December 7, 1885, stated that "before and at the time of the filing of the bill, she was, and now is, under the coverture of one George W. Davis, who is still living, to wit, in the city and State of New York." No replication was filed to the plea, but notice given by the plaintiffs, setting it down for hearing. No further action upon it is disclosed by the record. The answer of Mrs. Davis and her husband set forth "that in the winter of 1878 and spring of 1879 these defendants were residing in the city of New York, where they had been residing for some years; that the health of the defendant Sarah J. Davis not being good, she thought residing in Florida would benefit her, and that in the summer of 1879 she and her husband investigated the subject as well as they could by reading and talking with people from Florida, and from such investigation they concluded that if the climate should prove beneficial to the said Sarah J. Davis they would find it profitable to purchase an orange grove in South Florida, which the said Sarah J. Davis could take care of and manage, except in the summer months, while the said George W. Davis remained at his business in New York, the said Sarah J. Davis spending the the summer with him there;" and that after the purchase was consummated with the approval of Mr. Davis in New York in September, 1879, Mrs. Davis went to Florida in October and took actual possession of the property herself. The proofs showed that she continued personally in occupation of it from that time forward, and improved and cultivated it. Mrs. Davis was examined as a witness and testified that her husband was living in New York and was a party to the suit; and that she resided on the property and had occupied it ever

since she purchased it, except when she went "North in the summer for a few months."

The deed of Thomas E. Wilson to her of October 13, 1879, recorded November 24, 1879, described her as "Sarah J. Davis, wife of George W. Davis, of the city of New York," and the mortgage back was given by "Sarah J. Davis and George W. Davis, her husband, of the city of New York." On the 30th of March, 1884, Mr. and Mrs. Davis gave a mortgage to D. Appleton & Co., which was recorded in Orange County, Florida, February 12, 1884, and described the mortgagors as "George W. Davis, of the city of New York, and Sarah J. Davis, his wife."

We are satisfied the pleadings and proofs in the record, taken together, negative the averment of the bill as to the citizenship of Sarah J. Davis, and show that she and her husband were not citizens of Florida when the suit was commenced, and that it is fairly to be presumed that they were citizens of the State of New York.

The place where a person lives is taken to be his domicil until facts adduced establish the contrary, and a domicil when acquired is presumed to continue until it is shown to have been changed. *Mitchell* v. *United States*, 21 Wall. 350, 352; *Desmare* v. *United States*, 93 U. S. 605, 609; *Shelton* v. *Tiffin*, 6 How. 163; *Ennis* v. *Smith*, 14 How. 400. And although the wife may be residing in another place, the domicil of the husband is her domicil. Story Confl. Laws, § 46; Wharton Confl. Laws, § 43; and cases cited. Even where a wife is living apart from her husband, without sufficient cause, his domicil is in law her domicil. *Cheely* v. *Clayton*, 110 U. S. 701, 705.

The rule is, said Chief Justice Shaw in *Harteau* v. *Harteau*, 14 Pick. 181, 185, "founded upon the theoretic identity of person, and of interest, between husband and wife, as established by law, and the presumption that, from the nature of that relation, the home of the one is that of the other, and intended to promote, strengthen and secure their interests in this relation, as it ordinarily exists, where union and harmony prevail. But the law," he continued, "will recognize a wife as having a separate existence, and separate interests and sep-

arate rights, in those cases where the express object of all proceedings is to show, that the relation itself ought to be dissolved, or so modified as to establish separate interests."

Mrs. Davis was not separated from her husband, and no element of separate domicil, in any legal sense, existed.

It is clear that the Circuit Court, upon the development of the facts, should have proceeded no further, and dismissed the case.

But it is contended that the supposed defect was curable by amendment, and that this was actually done, and the court thereby justified in retaining jurisdiction. *Conolly* v. *Taylor*, 2 Pet. 556, is relied on. In that case a bill was filed in the United States court in Kentucky by aliens and a citizen of Pennsylvania. The defendants were citizens of Kentucky, except one who was a citizen of Ohio, on whom process was served in Ohio. The jurisdiction of the court was not questioned so far as respected the alien plaintiffs, but as between the citizen of Pennsylvania and the citizen of Ohio, the court could not exercise jurisdiction. Before the cause was brought on, however, the court permitted the complainants to amend their bill by striking out the citizen of Pennsylvania as complainant and making him a defendant, and the question was whether the original defect was cured by this circumstance, and whether the court, having jurisdiction over all the parties then in the cause, could make a decree. This court held that jurisdiction depended upon the state of the parties at the commencement of the suit, which no subsequent change could give or take away ; that if an alien became a citizen pending the suit, the jurisdiction which was once vested would not be divested ; and so if a citizen sued a citizen of the same State he could not give jurisdiction by removing and becoming a citizen of a different State, but that just as the omission to state the character of parties might be corrected at any time before hearing, so by an amendment made by striking out the person whose presence as a complainant prevented the exercise of the jurisdiction, the impediment could be properly removed. The case was one, however, where the remaining complainants might have originally instituted the suit without joining the

other unless as a defendant, and the other was retained as a party by the amendment.

In this case, on the 21st of December, 1886, after the proofs had been taken, but before the hearing, an amendment was permitted by the court by striking out the original averment as to the citizenship of the complainants Faber and Watt, executors, and inserting a new averment stating Faber's citizenship as before, but Watt to be "a subject of the kingdom of Great Britain, temporarily residing in the State of New York," and the cause was then directed, upon the ground that the letters to Faber had been revoked, to proceed in the name of James S. Watt, sole surviving executor of James Symington, and was discontinued as to Faber. But the difficulty with this attempt to obviate the fatal defect in jurisdiction was that the record showed that Watt was not the sole surviving executor of James Symington when the bill was filed, but on the contrary, when the application to amend was made, plaintiffs exhibited to the court and filed in the case exemplified copies of the records and files in the office of the surrogate of the county of New York in the matter of the application of Gustavus W. Faber for a revocation of the letters testamentary issued to him as one of the executors, by which it was shown that on the 4th of May, 1886, Faber filed his petition for the revocation of the letters as to him, and that the order of revocation was entered on that day. It therefore appeared that Watt could not have maintained the bill as amended, on the 25th day of August, 1885, when the bill as originally framed was filed, and jurisdiction could no more be given to the Circuit Court by the amendment than if a citizen of Florida had sued another in that court and subsequently sought to give it jurisdiction by removing from the State. *Clarke* v. *Mathewson*, 12 Pet. 164; *Morris* v. *Gilmer*, 129 U. S. 315.

*The decree is reversed and the cause remanded with instructions to dismiss the bill for want of jurisdiction.*

MR. JUSTICE BREWER dissented.