OREGON R. & NAV. CO. v. SHELL.

(Circuit Court, D. Washington, S. D. August 8, 1904.)

COURTS—JURISDICTION OF FEDERAL COURTS—BURDEN OF PROOF.

An averment in a bill in equity in a federal court that the amount or value in controversy exceeds $2,000, exclusive of interest and costs, does not give the court jurisdiction, unless sustained by proof, where it is put in issue, and such issue may be taken by answer.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 897.

Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

In Equity. On rehearing on the question of jurisdiction. For former opinion, see 125 Fed. 979.

HANFORD, District Judge. After hearing the reargument and giving consideration to an exhaustive review of the subject in the elaborate brief filed on behalf of the complainant, my belief is strengthened that the amount and value at stake in this case is not greater than the value of the real estate situated within the boundaries of that section of the two parallel lines of the complainant's railroads extending across the defendant's premises; and, although by an amendment to the bill of complaint the value of the land is alleged to be in excess of $2,000, the court cannot exercise jurisdiction resting upon that averment alone, without proof to sustain it, because the answer makes an issue. The act of Congress defining the jurisdiction of United States Circuit Courts comprehends both law and equity cases, and makes the same limitation with respect to the amount involved applicable to both systems of jurisprudence, and the courts are required to apply the same technical rules in equity cases that are applied in actions at law for the purpose of being assured of jurisdiction, and the appellate courts do not hesitate to reverse decrees and judgments when jurisdiction has been exercised by the Circuit Courts if the jurisdictional facts do not appear affirmatively in the record. It is true, as shown by the brief of counsel for the complainant, that by collusion of parties causes were litigated in the federal courts which were not in fact cognizable therein, and such abuses led to an amendment of the law, whereby the courts are required to dismiss or remand a case whenever satisfied that it does not really involve a controversy within its jurisdiction; and it is my opinion that the court must be so satisfied when a fact essential to the jurisdiction, averred in the pleading of the party invoking the jurisdiction, is controverted by the pleading of the opposite party, and the affirmative averment is not supported by evidence. This must be so, because it is illogical to cast the burden of proof upon the party having the negative side of a material issue.

The case of Anderson v. Watts, 138 U. S. 694, 701, 11 Sup. Ct. 449, 450, 32 L. Ed. 1078, relied upon by complainant's counsel in their argument, does not appear to me to support their contention that the burden of proof rests upon the defendants to disprove the averments of the bill with respect to jurisdictional facts, nor to deny the duty of the court to dismiss a case for want of jurisdiction which has been submitted without proof to sustain essential averments, traversed by an answer. In its opinion in that case, the court said:

"Although the averment as to citizenship may be sufficient, yet, if it appear that that averment is untrue, it is the duty of the Circuit Court to dismiss the suit; and this court, on appeal or writ of error, must see to it that jurisdiction of the Circuit Court has in no respect been imposed upon."

If an inference might be drawn from the quoted sentence detached from the body of the opinion that the duty of the court to dismiss would arise only when it shall be made to appear affirmatively that an averment of a jurisdictional fact is untrue; nevertheless any such inference is unwarranted after due consideration of the opinion in its

entirety. That case was a suit in equity, and the court held that since the act of 1875 the defendant in an equity case is not restricted by the rules of equity practice to a demurrer or plea as the only means available to test the jurisdiction of a circuit court, but may make objection to the exercise of jurisdiction in the answer; and the opinion reiterates what has been frequently declared by the Supreme Court:

"The jurisdiction of the Circuit Court is limited, in the sense that it has none except that conferred by the Constitution and laws of the United States, and the presumption is that the case is without its jurisdiction unless the contrary affirmatively appears."

It is my opinion that this presumption of a lack of jurisdiction must be controlling when the pleadings make an issue as to any fact essential to jurisdiction, and there is no evidence to sustain the affirmative allegation of such fact.

There is an abundance of evidence proving that the complainant may sustain immense losses if animals are permitted to stray upon the tracks of its railroads, but the right to operate the railroads free from obstruction by animals upon the tracks is not the subject of controversy in this case. The real controversy comes into view most clearly by a recital of its history. The defendants have possession of land which is divided by the railroads located across the same, and they have the right to enjoy the use of the portions of land on both sides of the railroads and of a way of necessity crossing the tracks. When the complainant fenced its right of way, the right of access was recognized, and swinging gates were placed in the fences to afford necessary access, and the complainant assumed that the defendants were obligated to render the service of opening and closing the gates. The defendants did not at first dispute the right of the complainant to inclose the right of way, but objected to the swinging gates, and insisted that cattle guards should be constructed to protect the right of way, the same as at public highway crossings, and they objected to the imposition upon them of the services required to keep the right of way inclosed by operating swinging gates. This dispute as to whether the crossing should be protected by gates made to swing upon hinges or by stationary cattle guards led up to another controversy with respect to the sufficiency of the right of way deed to vest in the complainant the title to all of the land which the complainant claimed by virtue of said deed. The object of this suit appears to me to be two-fold: First, to correct an apparent ambiguity in the deed, so as to vest in the complainant a perfect title to a strip of land wide enough to extend 50 feet from the center line of both tracks; and, secondly, for a mandatory injunction to compel the defendants to perform the service of keeping the swinging gates closed. The first controversy involves only the ownership of the amount of land claimed by the complainant. The title to the land is the subject of controversy, and the value of the land is necessarily the amount involved in that controversy; for by the decision one party will gain and the other will lose so much land, or its value, and nothing else.

The second controversy is what I have indicated, viz., insistence on the part of the complainant upon maintaining swinging gates for the purpose of closing necessary openings in its right of way fences, and

upon requiring the defendants to keep such gates closed, except when necessarily open for the use of the crossway over the tracks, and opposition on the part of the defendants to such gates, not disputing, however, the right of the complainant to have the free and unobstructed use of its tracks for the operation of trains thereover, and they make no objection to protecting the tracks by the maintenance of fences along the side lines of the roadbeds, which they concede to be the property of the complainant, with the usual standard cattle guards at the necessary openings in such fences. There is merit in the arguments on both sides of the question whether swinging gates or standard cattle guards afford the best security against such casualties as may be caused by animals straying upon the tracks. It is probably true that it is impossible to construct stationary cattle guards so as to constitute an absolute barrier against passage over the same by all animals, and it is equally true that a train may be wrecked by coming in contact with an animal finding its way upon the track through a gate left ajar by any careless or mischievous person. To make the gates effective requires vigilant watching. The evidence shows that there is a public highway across the defendants' land parallel with the railroad, so that animals other than such as may be controlled by the defendants may go upon the tracks at the crossway in question unless an effective barrier shall be maintained. Therefore an injunction merely restraining the defendants from demolishing the gates or mischievously leaving them ajar, and from intentionally permitting their animals to go upon the tracks, will not add much to the safety of trains running upon the tracks, and it is impossible to estimate the value which will be added to the railroad by the granting of an injunction in that form. It will strain the powers of a court of equity to render a decree granting a mandatory injunction to compel the defendants to render the services as gatekeepers which will be necessary to make gates effective. If the complainant has a paramount right, so that its choice of means for protecting its railways must be controlling in the determination of the controversy, and it is entitled to invoke judicial authority in aid of its will in this matter, the basis of such right is necessarily proprietorship of its right of way, and the right is a mere incident to ownership, and the value of the right cannot exceed the value of the fee-simple title to the land involved in the controversy. Supposing that the court should find from the evidence that the complainant paid nothing for the right of way strip, and that the deed is a grant of only one strip of a total width of 100 feet, and so indefinite that it is impossible to locate the strip by reference to either track, and on that state of facts should decree that the defendants convey to the complainant the double right of way claimed, and that the complainant pay them the value thereof; would the value be ascertained by estimating the immense loss which the complainant would sustain by cutting its lines and deprivation of the use of so much of its roadbed and tracks as are constructed upon defendants' premises, or would anything be added to the estimate of value as special consideration for the dominant right to inclose the right of way by any particular style of fence? I think that this query affords

a fair test of the question as to the amount involved, and that common sense dictates a negative answer.

For lack of evidence proving that the value of the land in controversy exceeds $2,000, the court is not sure that it has jurisdiction to render a decree granting any relief to the complainant.