## McHANEY v. CUNNINGHAM.

(District Court, W. D. Louisiana, Shreveport Division. March 14, 1925.)

### No. 1433.

**1. Domicile ⊝4(2) — Citizen of Arkansas, moving to Louisiana and voting therein, became "citizen" and was domiciled there, though intending to return.**

Where citizen of Arkansas moved to Louisiana. and with his wife registered and voted in at least one election. he became "citizen" and was domiciled in Louisiana, notwithstanding he always intended to return to Arkansas at some indefinite future time.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citizen.]

**2. Domicile ⊝4(2)—Intent to become citizen of another state, without change of domicile, not sufficient.**

Intent to become citizen of another state is not alone sufficient, but, before that status can be acquired, it is necessary to establish domicile or home in such state.

**3. Courts ⊝323—Citizen of Louisiana, returning to former domicile in Arkansas, held not to have acquired Arkansas citizenship or domicile.**

Where citizen of Louisiana went to Arkansas, intending to reacquire citizenship therein, if he could be released from unenforceable contract to teach in Louisiana, and purchased a home, but did not actually establish himself and family therein, held, that he did not reacquire his Arkansas citizenship, so as to give court jurisdiction of his action against citizen of Louisiana on ground of diversity of citizenship.

At Law. Action by W. R. McHaney against C. M. Cunningham. Defendant's exception to jurisdiction of court sustained.

Coulter & Coulter, of Little Rock, Ark., for plaintiff.

Robert A. Hunter and J. G. Palmer, both of Shreveport, La., for defendant.

DAWKINS, District Judge. This is a suit at law sounding in damages for the alleged libel by defendant of plaintiff. Defendant has excepted to the jurisdiction of the court, upon the ground that plaintiff, at the time of bringing the suit, was a resident of the Western district of Louisiana. Evidence submitted developed the following facts:

[1] Plaintiff is a native of the state of Arkansas. In 1913 he came to the state of Louisiana and taught school in the Southern portion thereof until 1916, after which he returned to Arkansas and engaged in the practice of law at Conway, in said state. At the beginning of the school term of 1920 he again returned to Natchitoches parish, La., where teaching was resumed and continued through and including the school term which ended in May, 1923. Plaintiff was accompanied by his family, at first boarding for a short while, and later doing light housekeeping. During the latter period (1920–1923) plaintiff and his wife both registered as voters and he voted in at least one election in the parish of Natchitoches. In the spring of 1923 he made an oral agreement with John S. Patton, superintendent of schools of Claiborne parish, to teach the public school at Summerfield, in that parish, for the term of 1923–1924.

After closing his school in May, 1923, he went to Eldorado, Ark., where his former law partner had, since plaintiff left the firm at Conway, in 1920, opened an office for the practice of law, and after some discussion agreed to re-enter the old partnership upon the same terms as before. Efforts were then commenced, both by the plaintiff and his law partner, to get the former released from his understanding with Patton for teaching the Summerfield school, and to find some one else that would suit Patton for that purpose. Such teachers as were available were unacceptable, and those whom Patton would consider could not be had. Plaintiff bought a home in Eldorado during the summer of 1923, furnished it in part and himself stayed in that city during the months of June and July, but his family remained in Natchitoches parish. In August he returned to Natchitoches and engaged a transfer man to transport his household effects to either Summerfield or Eldorado as circumstances might require, for which he was to pay $65 in event the first proved to be his destination, and $90 if the journey was continued to Eldorado. The goods were loaded in two trucks, plaintiff and his family traveling in another automobile.

On reaching Homer, La., the parish seat of Claiborne, he again attempted to get released from his teaching obligation. Patton stated that, if plaintiff insisted upon it, he could not be held, because no written contract had been signed; but, when put in this light, plaintiff, being an experienced and honorable school man, decided to go ahead and teach the Summerfield school during the term of 1923–1924. He took his household effects to the latter place and occupied quarters furnished by the school board during that time. At the end of that term, in 1924, he returned to Eldorado with his family and resumed the practice of law.

The petition in this case was filed on July 20, 1923, while plaintiff was engaged in his law business at Eldorado as detailed

above. The facts are practically undisputed, and the sole question is: Was he, under the circumstances outlined, a citizen of the state of Arkansas on July 20, 1923?

I am convinced that at the end of his school term in May, 1923, plaintiff was a citizen of and domiciled in the state of Louisiana. It is true that he says he always intended at some indefinite future time, while teaching in this state, to return to Arkansas to practice the legal profession; but, when he registered and voted in this state, he must have decided to give up that idea, for I cannot assume that he intended to commit a fraud upon its laws by claiming and exercising rights such as were given alone to a bona fide citizen. I take it, when these things were done, it was with the intention of identifying himself with the state in a political sense, which is the basis of citizenship. Harding v. Standard Oil Co. (C. C.) 182 F. 421.

[2, 3] Having concluded that the old status had been lost, and that plaintiff had become a citizen of Louisiana, do the facts under the law support the contention that he had regained citizenship in Arkansas on July 20, 1923? I have no doubt that plaintiff, at least after reaching Eldorado in the summer of 1923, and wishing to engage in the practice of law, intended, if he could be released from his teaching arrangement with the superintendent of schools of Claiborne parish, to resume his law practice and become again a citizen of his native state.

But intention alone is not sufficient. Before that status could be acquired, it was necessary that he re-establish his domicile or home in that state. (The words "home" and "domicile" are almost synonymous; the latter being derived from the Latin word "domus," meaning "home.") He bought a home and furnished it, at least in part; but whether he and his family should occupy it as such immediately, or at the end of the next school year, was dependent upon his being released from his moral obligation to teach in Claiborne parish. This release was not had. He returned to Louisiana, and did not actually establish himself and family in or reside in the house at Eldorado until the end of the school year 1924. In the meantime it was rented to other persons. He did spend most of his time during the months of June and July, 1923, in that city, returning, presumably occasionally to his family, who had remained in Natchitoches parish, until August, 1923.

My conclusion is that the contingent intention to resume his citizenship in Arkan-

sas had not been accomplished by the necessary and additional act and fact of establishing himself as such within that state before this suit was filed. "The place where a person lives is taken to be his domicile until facts adduced establish the contrary, and a domicile, when acquired, is presumed to continue until it is shown to have been changed." Anderson v. Watt, 138 U. S. 694, 11 S. Ct. 449, 34 L. Ed. 1078.

And in the case of Mitchell v. United States, 21 Wall. 352, 22 L. Ed. 584, the Supreme Court said: "To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject." See, also, Harton v. Howley (C. C.) 155 F. 491; Davis v. Dixon (C. C.) 184 F. 509; 25 C. J. 765, verbo "Federal Courts"; 19 C. J. 392, verbo "Domicile," § 1.

It is worthy of mention that plaintiff does not claim to have returned to his original home in Conway, Ark., but was attempting to establish a new domicile in the state of Arkansas at Eldorado, in another county. I am forced to conclude, therefore, that there was not at the time of filing the petition, which is controlling, the requisite diversity of citizenship between plaintiff and defendant and the plea to the jurisdiction is hence sustained.