Edward B. BAKER, Ann Britt Baker, Plaintiffs,

v.

Richard Joseph MURPHY, Mary Lou Murphy and Citibank, N. A., Defendants.

Civ. Nos. 79–582, 79–2030.

United States District Court, D. Puerto Rico.

June 23, 1980.

Ralph Vallone, Jr., Hato Rey, P. R., for plaintiffs.

Mconnell, Valdés, Kelley, Sifre, Griggs & Ruíz–Suria, Hato Rey, P. R., for defendants.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is a breach of contract case that should have been filed in the state forum. Instead, plaintiffs filed it in the U. S. District Court for the District of Puerto Rico and after more than a year of litigation regarding the jurisdiction of this Court the end of the real controversy among the parties is not yet in sight. The delay is of plaintiff's own making. Three U. S. District Judges have intervened; two complaints and three amended complaints have been filed; and now we are compelled, in spite of the inordinate amount of this Court's time which has been consumed, to dismiss the complaint. In fact, this is the type of case that brings disrespect to the diversity jurisdiction now under heavy attack.[1]

Plaintiffs filed their Complaint initially on February 28, 1979 and the case was assigned civil number 79–582. It was alleged therein that plaintiffs reached an agreement with Richard Joseph Murphy and his wife, Mary Lou Joseph (the Murphys) to buy their penthouse apartment 11–A in Condominium Park Terrace, Ashford Avenue, Condado, Puerto Rico. The purchase price was $160,000 with an existing first mortgage of $134,000 to be assumed by the purchasers and the balance to be paid in cash, $21,000 at the closing of the transaction and $6,000 to be paid immediately as earnest money.[2]

The first mortgage was held by co–defendant Citibank, N.A. and it was alleged that after assurances were given by said co–defendant to the effect that the mortgage was assumable by the purchasers, later on "defendants, as a result of the rising interest rates, were later denied assumption of mortgage."[3] Under these circumstances the transaction between plaintiffs and the Murphys could not be concluded.

No specific act of non–compliance is charged against the Murphys and apparently the cause of action against Citibank is predicated on the ground that one of its employees first gave oral assurances that the mortgage was assumable and thereafter refused to approve the transfer of the mortgage, as the result of the rising of the interest rates.

---

1. Jurisdiction Amendments Act of 1979, S–679, 96th Cong., 1st Sess. (March 15, 1979); The Magistrate's Act of 1979, 93 Stat. 643, H.R. 1046, S–95th Cong., 1st Sess. (January 18, 1979); H.R. 130, 96th Cong. (Jan. 15, 1979); H.R. 2202, 96th Cong. (Feb. 15, 1979); Warren, *New Light on the History of the Federal Judiciary Act of 1789*, 37 Harvard L.Rev. 49.

2. The statement in the Complaint to the effect that $6,000 was to be paid as earnest money is incorrect. According to the contract the correct amount to be paid as earnest money was $5,000, otherwise the total price would have been $161,000.

3. See paragraph 10 of original and amended complaints.

The above notwithstanding, plaintiffs request specific performance and damages in the amount of $40,000.00.[4]

The jurisdictional statement in the original complaint stated that plaintiffs "are residents of New Hamphire (sic) with substantial business contacts in San Juan". As to the Murphys it was claimed that they were residents of Puerto Rico "and presently by information and belief residents of the United States of America".[5] These statements are clearly insufficient to support jurisdiction based on diversity citizenship.[6]

■ Jurisdiction is a threshold determination that cannot be waived, *Vélez v. Crown Life Ins. Co.*, 1 Cir., 599 F.2d 471, and it must appear from the face of the complaint, *Shultz v. Cally*, 528 F.2d 470; *Bowman v. White*, 4 Cir., 388 F.2d 756, certiorari denied, 393 U.S. 891, 89 S.Ct. 214, 21 L.Ed.2d 172 (1968). Furthermore, the Courts in the federal system must, at all stages of a proceeding, make certain of possessing the power to act. *Mansfield v. Swan*, 111 U.S. 379 (1884); *Cameron v. Hodges*, 127 U.S. 322, 8 S.Ct. 1154, 32 L.Ed. 132 (1888); *Louisville and Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

■ The burden of establishing jurisdiction is on the one party invoking it. *Resnik v. La Paz Guest Ranch*, 9 Cir., 289 F.2d 814 (1961); *Hawes v. Club Ecuestre El Comandante*, 1 Cir., 598 F.2d 698 (1979); *Herzog v. Herzog*, D.C., 333 F.Supp. 477 (1971).

■ Not surprisingly, defendants moved for dismissal and plaintiffs requested permission to amend the complaint. Permission was granted to file an amended com-

plaint on June 15, 1979. It was again alleged that the Murphys were "residents of Puerto Rico and presently by information and belief residents of the United States of America."[7] This allegation failed to cure the defect of the original complaint and the jurisdictional statement remained insufficient. It is well known that an allegation that a party is a resident of a certain state is not enough, since consistently with that averment he may be a citizen of any other state. *Delome v. Union Barge Line Co.*, 5 Cir., 444 F.2d 225, certiorari denied 404 U.S. 995, 92 S.Ct. 534, 30 L.Ed.2d 547; *Pattiz v. Schwartz*, 8 Cir., 386 F.2d 300.

For a second time defendant moved to dismiss and again plaintiffs requested permission to amend. A second amended complaint dated June 29, 1979 was filed. This time plaintiffs stated that the Murphys were residents and domiciliaries of Puerto Rico and by information and by belief were presently residents of the United States of America.[8] The defect, therefore, was not cured.

■ Considering all the above, the late Chief Judge José V. Toledo issued an Opinion and Order dated August 20, 1979 dismissing the complaint. Thereafter plaintiffs requested that the dismissal be without prejudice. Said motion was denied by Judge Toledo. Trying to salvage its complaint plaintiffs requested reconsideration together with permission to file a third amended complaint dated November 5, 1979. In this third amended complaint plaintiffs alleged that the Murphys "upon information and belief are presently citizens of the State of New Jersey and of the

---

4. Although we are not deciding this case on the merits, we should point out that it is highly doubtful that plaintiff's naked factual allegations could stand close scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

5. See original complaint filed February 28, 1979, 2nd paragraph.

6. *Chicago Stadium Corp. v. State of Indiana*, 7 Cir., 220 F.2d 797 (1955); *Chemical Transp. Corp. v. Metropolitan Petroleum Corp.*, D.C., 246 F.Supp. 563 (1964); *Smith v. Dealers Tran-*

sit, Inc., D.C., 239 F.Supp. 605 (1965); *Lyons v. Borden*, D.C., 200 F.Supp. 956 (1961); *Gillespie v. Schomaker*, D.C., 191 F.Supp. 8 (1961); *Pemberton v. Colonna* D.C., 189 F.Supp. 430 (1960); *McGlynn v. Employers Commercial Union Ins. Co. of America*, D.C., 386 F.Supp. 774 (1974).

7. See 2nd paragraph amended complaint filed June 1, 1979.

8. See paragraph 2(a) of amended complaint filed July 2, 1979.

United States of America". Said amended complaint, together with an identical complaint filed under civil number 79–2030,[9] are now under our consideration.[10]

In our opinion the amended complaints in 79–582 and the complaint in 79–2030 still suffer from defective jurisdictional pleadings, which are fatal.

█ Where jurisdiction depends upon the citizenship of the parties, such citizenship, or the facts which in legal intendment constitute it, should be distinctively and positively averred in the complaint. *Anderson v. Watt*, 138 U.S. 694, 702, 11 S.Ct. 449, 451, 34 L.Ed. 1078. Such distinctiveness and positiveness are lacking when the allegations of citizenship are couched in evasive language such as "upon information and belief". When made in that manner, said allegations do not constitute the affirmative pleading of fact on which the Court must conclude that jurisdiction prevails. *Carroll v. General Medical Company*, D.C., 53 F.R.D. 349, 350 (1971); *Gillespie v. Schomaker*, 191 F.Supp. 8–10 (E.D.Ky., 1961).[11]

We agree with the principle that leave to amended complaints "shall be freely granted when justice so requires", Rule 15(a), 3 *Moore's Federal Practice*, 2d Ed., Secs. 15.-08, 15.10; 6 *Wright and Miller*, Rule 15, Sec. 1743, p. 376, but here we are confronted with the problem of how far can a Court go along that line when the amended complaints fail to cure the defect of the prior ones.

Clearly, a party that repeatedly fails to adequately plead jurisdiction in spite of opportunities given to amend its complaint has no place in the federal courts. See

*Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1968). We find it an intolerable imposition on our time and limited resources to grant any further opportunities to amend, when plaintiffs have failed to adequately plead in previous occasions. Cf. *J. Rodríguez de Quiñones et al. v. Julio César Pérez*, Civil 79–708, 1st Circuit Slip Op., May 7, 1979.

WHEREFORE, in view of the foregoing, plaintiffs' Motion for Reconsideration is hereby DENIED. The complaints in cases 79–582 and 79–2030 are hereby dismissed [12] for lack of jurisdiction.

IT IS SO ORDERED.

---

**9.** The jurisdictional statement in civil case number 79–2030 is identical with that in the third amended complaint in civil case number 79–582.

**10.** Civil case number 79–2030 was assigned to U. S. District Judge Juan R. Torruella, of this Court, but upon noticing that its allegations were identical with those of civil case number 79–582 issued an Order dated March 18, 1980 transferring the case for joint resolution with 79–582.

**11.** Although we are aware of authorities to the contrary, (See Moore's Federal Practice, Section 8.10) we refuse to follow them in the factual framework of this case.

**12.** Due to the conclusion we have reached, it is not necessary to consider in detail another possible reason for dismissal, i. e., jurisdictional amount as pleaded is doubtful in a case claiming specific performance when the contract carries a penalty of $5,000 for the noncompliance of one of the parties, (see Article 1106 of Civil Code of Puerto Rico, 31 LPRA, Section 3131).