**STONE et al. v. PHILLIPS.**

No. 5541.

Court of Civil Appeals of Texas. Amarillo.

April 12, 1943.

Rehearing Denied May 10, 1943.

Baker & Baker and R. E. Murphey, all of Coleman, for appellants.

Shepherd & Patteson, of Ballinger, and E. M. Critz, of Coleman, for appellee.

PITTS, Chief Justice.

The record shows that on October 4, 1926, appellant, Mary Phillips Stone, then a feme sole whose maiden name was Mary Esther Phillips, executed, together with her mother, Katherine Phillips, a renewal note in the sum of $632.91 with interest, payable to J. M. Cordell in twenty-four monthly installments at $25 per month on the 4th day of each month beginning November 4, 1926, with the last installment of $32.91 due and payable on November 4, 1928; that said note was secured by a deed of trust executed by the same parties on all of Lot 6 in Block 93 of the First Railroad Addition to the town of Ballinger, Runnels County, Texas; that on April 21, 1928 appellant, Mary Esther Phillips, was married to Aaron A. Stone; that on July 14, 1930, the note and deed of trust were transferred and assigned to appellee, John Phillips, by J. M. Cordell; that Katherine Phillips died intestate on May 7, 1941; that thereafter appellee sued appellants, Mary Phillips Stone and her husband, Aaron Stone, in the District Court of Runnels County for amount of the note with interest and attorneys' fees and to foreclose the lien on the land described in the deed of trust.

Donald Phillips intervened in the case claiming certain improvements placed by him on the land above described for which he obtained judgment in the trial court, from which judgment no appeal was perfected and about which no complaint is made by appellants or appellee.

Appellants answered to the effect that the final payment on said note was more than fourteen years past due and that same, together with the deed of trust, were therefore barred by the statute of limitation, in response to which appellee filed a denial and alleged that Mary Phillips Stone was a resident and citizen of Texas at the time the note and deed were executed and that she was a resident and citizen of Texas continuously until the date of the trial but that she had been continuously out of the State since appellee's cause of action had accrued and thus invoked a statutory exception to the plea of limitation.

At the close of the evidence both appellants and appellee moved the trial court for a peremptory instruction, appellee on the grounds that the undisputed testimony showed appellant, Mary Phillips Stone, owed the amount of the note and that the debt and lien were not barred by the statute of limitation, and appellants on the ground that the note and lien were barred by the statute of limitation. The trial court overruled appellants' motion, dismissed the jury and entered judgment for appellee for the sum of $1,450.73, the amount of the note with interest and attorneys' fees, and a foreclosure of the deed of trust lien, from which appellants perfected their appeal to the Court of Civil Appeals of the Third Supreme Judicial District at Austin, and the same was transferred to this Court by the Supreme Court of Texas.

It was agreed in the trial court by the parties that the note sued on was lost but that appellee owned the note with an unpaid balance of $1,450.73 as principal, interest and attorneys' fees.

Appellants state that the sole question to be decided on this appeal is the question of the statute of limitation on the note and deed of trust lien based on the question of residence or domicile of the appellant, Mary Phillips Stone, with which statement appellee agrees. Appellants contend in their brief only that Mary Phillips Stone, nee Mary Esther Phillips, was a non-resident of Texas when the note and deed of trust were executed and for a period of some thirteen years thereafter, while appellee contends that Mary Phillips Stone, nee Mary Esther Phillips, was a citizen of Texas and claimed Texas as her home from the date of her birth on April 15, 1886, up to and including the date of the trial of the case in the trial court on June 3, 1942, but that she was absent from the State of Texas during the entire period of limitation claimed except for about one year, immediately preceding the trial of the case.

It is a well settled rule of law that a non-resident of the State of Texas does not come within the exception of a statutory limitation plea and that limitation may run in his favor. 28 Tex.Jur. 234, par.

135, and Wilson v. Daggett et al., 88 Tex. 375, 31 S.W. 618, 53 Am.St.Rep. 766.

Appellant, Mary Phillips Stone, testified on direct examination, among other things, that she lived in Brownwood, Texas from 1918 to 1924; that prior to that time she lived at Ballinger, Runnels County, Texas, where she had served as district clerk for 8 years; that on July 30, 1924, she left Texas for Washington, D. C., where she lived until February, 1933, when she moved to Maryland, near Washington, but that she never did abandon her home in Texas and came back to Texas on May 9, 1941, to attend the funeral of her mother, and the record shows she has lived in Texas since that date.

On cross-examination appellant, Mary Phillips Stone, testified as follows:

"Q. You said that you had never abandoned your home in Texas? A. No, sir.

"Q. Then you did testify to that? A. I never abandoned it.

"Q. You mean to tell the jury that you considered yourself a citizen of the State of Texas all the time? A. Absolutely, which can be proven.

"Q. Now, during the time you were in Washington you claimed your home as being in Texas? A. Absolutely.

"Q. You claimed citizenship in the State of Texas? A. Absolutely.

"Q. You never claimed your citizenship was in Maryland, or Washington? A. No, sir.

"Q. You claimed the right to vote if you had been here? A. Absolutely.

"Q. If you had been here you would have voted. Is that right? A. I voted here when I was in Brownwood.

"Q. I am sure you did. And, you would have voted here while you were living in Washington if you had happened to be here on election day? A. Yes, sir.

"Q. You were temporarily in Washington, and temporarily in Maryland all that time you were gone? A. I guess that is what you would call it.

"Q. You were born in Texas, I guess? At Ballinger? A. No, sir, in Kaufman County.

"Q. About how old were you when you moved to Ballinger? A. I was born in 1886, April 15th, and we moved to Ballinger in 1905 on Thanksgiving day.

"Q. And you lived here until you went to Brownwood temporarily in 1920? A. 1918.

"Q. This was your home from 1905 until 1918; your real home? A. I personally resided here.

"Q. And this is really your home until now, for that matter? A. Yes, sir.

"Q. You resided here and had your home here until 1918? A. Yes, sir.

"Q. And in 1918 you went to Brownwood? A. Stayed there until 1924.

"Q. You lived in Brownwood about six years but this was still your home here in Ballinger? A. Yes.

"Q. And from 1924 practically until sometime this year you were actually residing practically all the time in Washington and Maryland, but this was still your home? A. I came here a year ago and have been here a year; I have been here a year May 9th.

"Q. And from 1924 until May of last year you were temporarily in Washington working there; Washington and then Maryland but this was still your home? A. Yes, sir.

"Q. And you considered yourself a citizen of Texas all that time? A. Yes, sir.

"Q. And still do? A. Yes, sir.

"Q. You do that notwithstanding your marriage? A. I married in Virginia.

"Q. Where is your husband living now? A. In Maryland.

"Q. And works in Washington? A. Yes, sir; yes, he works in Washington."

The record discloses that appellant, Mary Phillips Stone, testified that she visited her mother in Texas about four years before her death.

Appellants contend that in spite of her testimony Mary Phillips Stone was a resident of Washington, D. C. long before her marriage in 1928 and after her marriage she resided in Washington, D. C. until 1933 and in the state of Maryland after 1933; that the domicile of the husband controls the domicile of the wife; that the husband has the right to establish the residence of the family and that the limitation on the note and deed of trust began to run on November 4, 1928, the date of maturity, and the note and deed were therefore barred by limitation by the date the suit was filed in 1942.

The record discloses that Aaron A. Stone, husband of Mary Phillips Stone, lived in Maryland and worked in Washington at the time of the trial of the case in the trial court but the record does not disclose what place Aaron A. Stone claimed

as his residence or place of domicile at any time during his marriage to Mary Phillips Stone, nor that he designated any place as the family residence.

The intention of a person has much to do with his legal residence or domicile.

Webster's New International Dictionary defines "domicile" in law as a "residence at a particular place accompanied with an intention to remain there for an unlimited time. A man can have but one domicile for one and the same purpose at any one time, though he may have numerous places of residence."

The New Century Dictionary defines the word "domicile" in law as "the place where one has a home or permanent residence, to which, if absent, he intends to return."

Words and Phrases, Permanent Edition, vol. 13, page 271, says: " 'Domicile' of a person is a legal home, and every person has a domicile which may be his then residence or otherwise, depending on all circumstances."

Corpus Juris Secundum, vol. 28, Domicile, § 1 page 1, defines "domicile" as follows: "Domicile is the legal conception of home, and the relation created by law between an individual and a particular locality or country. The term has been variously defined, the definitions agreeing substantially on the elements of a true, fixed home, habitation, or abode, where a person intends to remain permanently or indefinitely, and to which, whenever absent, he intends to return".

The same text and volume, § 2, page 5, further states "While 'domicile' and 'residence' are frequently used synonymously, they are not, in precise usage, convertible terms; 'domicile' is a larger term, of more extensive signification, while 'residence' is of a more temporary character. One may have his residence in one place while his domicile is in another, and may have more than one residence at the same time, but only one domicile."

The trial court found as a matter of law in his judgment that the note and lien sued on were not barred by the statute of limitation and thus, in effect, found that appellant, Mary Phillips Stone, was a legal resident of Texas and held her domicile in Texas and that limitation did not run because of her absence from the State of Texas.

Judgment was rendered by the trial court only against appellant, Mary Phillips Stone.

The question before this Court is whether or not the evidence conclusively supports the judgment of the trial court.

We find that appellant, Mary Phillips Stone, positively testified against her interest that she was a native Texan and never did abandon her Texas home; that she was temporarily away working in Washington; that she would have voted in Texas while living in Washington and Maryland if she had been here; that she did return to Texas on May 9, 1941, and had since been living in Texas for more than a year at the time of the trial on June 3, 1942. None of these statements were contradicted and no evidence was offered to refute any of them. It seems to us that this woman, who had served eight years as District Clerk of Runnels County, Texas, knew what she was talking about.

There is no testimony showing the residence or domicile of her husband, Aaron A. Stone, at any time except "now", the day of the trial. Mary Phillips Stone testified that he is "now" living in Maryland and working in Washington. There is no evidence showing that Aaron A. Stone designated any place as the family residence at any time. There is also no evidence that he ever established a home at any place at any time or that he and his wife ever resided together in such a home.

There is no question but what Mary Phillips Stone at one time had her residence in Texas and that she had a right to choose the place of her legal residence and domicile until she was married, at least, and that she did choose Texas as such and there is no evidence of any change of her legal residence or domicile at any time.

15 Tex.Jur. 719, par. 8, says: "A domicile, once existing, is presumed to be retained until shown otherwise" and a number of other authorities are cited in support of this rule. 17 Tex.Jur. 324, par. 97, says: "The burden of proof is on a party who seeks to overcome a presumption of fact." Such was not done or attempted in this case.

The evidence shows conclusively that appellant, Mary Phillips Stone, was outside the State of Texas after the date the note in question accrued until May 9, 1941, when she returned to Texas, and has since lived here for more than a year. The fact that she returned and has lived in Texas for more than a year seems to support all of her testimony to the effect that Texas has

been her legal residence and domicile for all these years.

■ We think the evidence conclusively supports the judgment of the trial court and that he therefore correctly rendered judgment for appellee. Article 5537, Revised Civil Statutes; 28 Tex.Jur. page 229, par. 129, page 231, par. 131, page 232, par. 132, page 233, par. 133 and page 234, par. 135; Koethe v. Huggins, Tex.Civ.App., 271 S.W. 143; Watts v. McCloud, Tex.Civ.App., 205 S.W. 381; Robin v. Ely & Walker Dry Goods Co., Tex.Civ.App., 137 S.W. 2d 164; Bemis v. Ward, 37 Tex.Civ.App. 481, 84 S.W. 291.

The judgment of the trial court is therefore affirmed.

STOKES, Justice (dissenting).

I regret that I cannot agree with the other members of the Court in the disposition that has been made of this appeal. As shown by the opinion, they have held that appellant, Mrs. Stone, was not entitled to the benefit of our four-year statute of limitation, Article 5527, R.C.S., under her claim that she was a nonresident of the State at the time the cause of action arose and continuously thereafter until the note upon which she was sued was barred by the four-year statute of limitation. The conclusion is based solely upon that portion of her testimony that is copied in the opinion. The most that can be drawn from that testimony is that at all times after she left the State in 1924 she considered herself a citizen of Texas, claimed Texas as her home, and that although she married in Virginia and lived thereafter with her husband in Maryland and at Washington, D. C. for fourteen years, her absence from this State was only temporary and she claimed Texas as her home during all of that time. They state that it is evident she is a woman of intelligence and knows what she is talking about.

The statute invoked by the appellee, Article 5537, provides that "If any person against whom there shall be cause of action shall be without the limits of this State at the time of the accruing of such action, or at any time during which the same might have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the State and the time of such person's absence shall not be accounted or taken as a part of the time limited by any provision of this title."

Appellant married in Virginia on April 21, 1928. The note became due and the cause of action arose on November 1, 1928. She lived in Washington, D. C. at the time of her marriage but it may be conceded, under her testimony, that during her residence there before she married she was a resident of Texas and was temporarily absent. While she was a single woman she undoubtedly had the right to establish her own residence and her intention during that time was an important element, but the cause of action did not accrue until after she married. When she married, her legal and social status underwent a complete change; and the mere fact that she claimed Texas and Runnels County as her home after that has little or nothing to do with her legal status or residence during the years after she married and while she was domiciled with her husband in other States and at other places. In addition to the legal presumption that she lived during all of that time with her husband, the testimony is replete with uncontradicted evidence that she did so. It shows that they married in Virginia on April 21, 1928. She said she sent money to her mother before her mother's death on May 7, 1941, and that her husband also sent money to her mother and that he paid some of the insurance. She said that she lived in Washington, D. C., in 1933, that she then moved to Maryland, and that her husband lived in Maryland at the time of the trial. Several weeks after her mother died in 1941, and while she was still in Texas attending to the business affairs made necessary by her mother's death, she said she was in a hurry and wanted to get back to her husband. There is not a line of testimony that her husband ever lived in Texas nor that he ever had the slightest intention of doing so. It is not claimed by appellee, nor shown by the statement of any witness, that appellant and her husband did not live together constantly from the day of their marriage until this suit was tried, a period of fourteen years. I do not find anything in the testimony that would warrant the conclusion that Mrs. Stone is living in Texas now or that she has had her residence in Texas since the death of her mother. Her testimony showed that she and her brothers had considerable disagreement with reference to the property owned by her mother, which delayed her return to Washington where she was working, although living in Maryland only a short distance from Washing-

ton. She said that it had been several weeks after her mother's death and it was in connection with this delay that she said she wanted to get back to her husband. She said that she did not get to discuss the business matters with her relatives until the eighteenth of July, 1941. This suit was filed September 8, 1941, and tried at a special term of the court in June, 1942. The only testimony in the record that would warrant the conclusion that she has lived in Texas, in the sense that her residence has been in this State, since the death of her mother is her own statement that she had been a resident of Texas ever since her marriage, and the fact that she seems to have been forced to remain here to settle the affairs of her mother's estate and prepare for and attend the trial of this case. The petition of appellee alleges that the appellant, Mary Phillips Stone, resides in Runnels County, Texas; that Aaron Stone is her husband; and that he resides in Washington, D. C. It is not alleged, nor is it claimed by appellee, that Mrs. Stone and her husband were living separate and apart from each other, and the majority state in their opinion that there is no showing in the testimony as to the residence of the husband except "now" which was Maryland. Mrs. Stone did not testify that she ever entertained the intention of returning to Texas at any time. Her testimony consisted of nothing more than her own ideas of her residential status. Regardless of what she may have thought or believed as to the locus of her residence or citizenship, the law has established it for her, and her thoughts or conceptions as to what it was could not work a change in the established law.

It has been the law in Texas ever since the Constitution of the Republic was adopted that the domicile of the husband is the domicile of the wife. McIntyre v. Chappell, 4 Tex. 187; Russell's Heirs v. Randolph, 11 Tex. 460. In Henderson v. Ford, 46 Tex. 627, decided in 1877, our Supreme Court said: "By the marriage, as has been said, Mrs. Bohanon acquired a domicile in Texas." Two years later, in Clements v. Lacy, 51 Tex. 150, the same Court said: "From the above and the direct authority of this case on the former appeal, (36 Tex. 661), we deduce the familiar principle, that the domicil of the husband draws to it the legal domicil of the family." In Williams v. Moody, 35 Minn. 280, 28 N.W. 510, 511, the Supreme Court of Minnesota said: "As head of the family, it is for the husband to determine and fix the domicile of the family, including that of the wife. His domicile is therefore her domicile; so that when he and his wife remove from a homestead, he having no intention of returning, that fixes the character of the removal as an abandonment, for the intent of the husband as head of the family controls, and he has the right to determine whether there shall be a return or not."

In the recent case of Harwell v. Morris, Tex.Civ.App., 143 S.W.2d 809, 816, this Court repeated the principle that has been stated many times by our own courts, and said: "It has never been the law in Texas that the residence of the husband is drawn to that of the wife where they happen, for a time, to be at different places."

In Anderson v. Watts, 138 U.S. 694, 11 S.Ct. 449, 452, 34 L.Ed. 1078, Chief Justice Fuller, speaking for the Supreme Court of the United States, said: "The place where a person lives is taken to be his domicile until facts adduced establish the contrary; and a domicile, when acquired, is presumed to continue until it is shown to have been changed. [Citing authorities]. And although the wife may be residing in another place, the domicile of the husband is her domicile. * * * Even where a wife is living apart from her husband, without sufficient cause, his domicile is in law her domicile. * * * The rule is, said Chief Justice Shaw, * * * 'founded upon the theoretic identity of person and of interest between husband and wife, as established by law; and the presumption, that from the nature of that relation, the home of the one is that of the other, and intended to promote, strengthen and secure their interests in this relation, as it ordinarily exists, where union and harmony prevail.'"

In Richmond v. Sangster, Tex.Civ.App., 217 S.W. 723, 728, this Court held that "In Texas the erring wife cannot fix the domicile of the husband, Speer's Law of Marital Rights, §§ 72, 73, 403. There is not a line of evidence in the record which even remotely tends to show that the appellee ever fixed, * * * his residence at Dalhart, Tex." If an erring wife cannot fix the residence of the husband, then no other wife can do so. In that case, as in this, the burden rested upon the plaintiffs to prove the fact of the defendant's residence in Texas. In the instant case the appellant discharged her burden of establishing the fact that the note was barred by limitation. The note itself was sufficient to show that. Ap-

pellee then alleged and attempted to show that the appellant was at all times a resident of Texas but that she had been temporarily absent from the State a sufficient length of time which, if deducted from the time that had elapsed since the note was due, would bring the note within the limitation period, as provided by Article 5537, R.C.S.1925. Since the residence and domicile of appellant was that of her husband, it was the burden of appellee to establish the residence of the husband to be in Texas. This was not done. In fact, the allegations in appellee's petition and what little evidence there was as to the place of his residence were to the contrary. It is certain, however, that at no time was he ever a resident of Texas.

While it is true that in all of the cited Texas cases the parties involved had removed from other States to Texas, the principle of law cannot be different in a case like this, where the removal was the reverse, i. e., from Texas to another State. The principle that the residence of the wife is controlled by that of the husband was adhered to by the common law and it is unquestionably the law in Texas. Since there was no allegation or proof to the contrary, if it is material, we must assume that the laws of the States and jurisdictions here involved are the same as those of this State. Kinney v. Tri-State Tel. Co., Tex. Civ.App., 201 S.W. 1180; Thompson v. Thompson, Tex.Civ.App., 202 S.W. 175. The statute, Article 5537, which suspends the period of limitation during the absence of the debtor, has no reference to one who was a nonresident of the State at the time the cause of action arose, nor to one who, although having been a resident, was a nonresident and absent from the State when the cause of action arose and did not return within the period of limitation. Habermann v. Heidrich, Tex.Civ.App., 66 S. W. 106; Alley v. Bessemer Gas Engine Co., 5 Cir., 262 F. 94; Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W. 2d 226.

I am persuaded that the matter here involved is one of deep concern to the jurisprudence of the State. In most of the cases where the question has been at issue, landed and other property rights were involved, and particularly the question of whether land and other property acquired by the husband in Texas belonged to the community under Texas law or to the husband under the rule of common law that prevailed in the States from which the litigants or their ancestors migrated. The issues were determined upon the question of the residence of the parties and, as shown by the authorities I have cited, and many others that could be cited, it has invariably been determined by ascertaining the place of residence of the husband when the property was acquired. The well-established rules of law relating to matters of such import ought not to be embarrassed by a holding that the residence of a married woman may be established by proof of her expressed ideas and conceptions of her legal status in that respect.

In my opinion, the plea of limitation asserted by appellant should have been sustained and the judgment of the court below should be reversed.