**Marilyn WHATLEY and Carol Gerber, Plaintiffs-Appellees,**

v.

**T. J. CLARK, etc., et al., Defendants-Appellants,**

**Emma Maria Garza et al., Intervenors.**

**No. 73–1057.**

United States Court of Appeals,
Fifth Circuit.

Aug. 3, 1973.

Rehearing Denied Aug. 29, 1973.

---◆---

Sam L. Jones, Jr., Asst. Atty. Gen. of Texas, Austin, Tex., for the State.

John E. Lawhon, County Atty., Denton, Tex., for Lasater.

Norris W. Yates, Jr., Asst. Dist. Atty., San Antonio, Tex., for Davis.

Tom P. Senff, Nacogdoches, Tex., for Clark.

James A. Brady, Doren R. Eskew, Austin, Tex., amicus curiae.

David R. Richards, Austin, Tex., William H. Kugle, Jr., Athens, Tex., for plaintiffs-appellees.

Frank T. Ivy, Austin, Tex., for intervenors.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

THORNBERRY, Circuit Judge:

A Texas statute provides that "a student in a school, college, or university" shall not be considered to have acquired a voting residence at the place where he lives while attending school "unless he intends to remain there and to make that place his home indefinitely after he ceases to be a student." Tex.Election Code art. 5.08(k), V.A.T.S.[1] Whether this provision infringes rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment, is the primary issue before us in this appeal.

Appellee Dennis Green, a student at North Texas State University in Denton County, Texas, made application to appellant George Lasater, Denton County Assessor and Collector of Taxes, to register to vote in Denton County. Pursuant to Article 5.08(k), *supra*, Lasater asked Green whether he intended to make his home in Denton County indefinitely after he ceased to be a student. Green replied that he had no such intentions, and Lasater refused to register him. On behalf of himself and all others similarly situated, Green brought suit in the court below seeking a declaration that Article 5.08(k) is constitutionally invalid. The court below held that the suit was properly maintainable as a class action,[2] and declared Article 5.08(k) invalid under the Equal Protection Clause.[3] We affirm the judgment below.

■■ Before reaching the merits, we must dispose of two procedural points raised by appellants. First, it is argued that the court below erroneously denied appellants' request to convene a three-judge court. As noted above, however, *supra* note 3, appellees sought only declaratory relief with regard to Article 5.08(k). Under such circumstances, the court below correctly denied the request to convene a three-judge court. Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970). Secondly, appellants argue that the instant suit cannot be properly maintained as a class action. Appellants point out that a determination of the voting residence of each member of the class will entail the reso-

1. With the exception of persons in the military service of the United States, Tex.Election Code art. 5.08(j), Texas does not expressly apply this rule to any group other than students. The validity of the rule as applied to members of the armed forces is not before us on this appeal, and we intimate no view as to its validity as applied to servicemen.

2. The court below held that Green represented a class that included "students who consider their community their home but whose present intentions for the future either are unclear or are not definite enough to reflect plans to move to another community after graduation."

3. In the instant case we review only this declaratory judgment, although the case originated as a request for both declaratory and injunctive relief against Article 5.08(k) and another provision of the Texas Election Code governing durational residency requirements. The original complaint was later amended to include appellee Green's request solely for declaratory relief with regard to Article 5.08(k), and a separate trial was ordered as to his claims.

lution of questions of fact peculiar to each member. Appellees, however, were not seeking a declaration that each member of the class satisfied the voting residence requirements; rather they sought only a declaration that Article 5.08 (k) is unconstitutional. The issue thus presented is amenable to resolution in a class action. *See* Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). We turn, therefore, to the merits.

■ At the outset, we must call attention to what is *not* at issue here. Texas has unquestioned power to restrict the franchise to bona fide residents. Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). Indeed, such a restriction "may be necessary to preserve the basic conception of a political community. . . ." *Dunn, supra,* 92 S.Ct. at 1004.[4] At the same time, however, .if residence requirements are to withstand constitutional scrutiny, they must be "appropriately defined and uniformly applied." *Id.* The issue in the instant case, therefore, is simply whether Article 5.08(k) represents a proper exercise of the State's power to impose reasonable residence requirements upon the right to vote.

Appellants suggest that there is little, if any, substantive difference between the residence requirements imposed upon students by Article 5.08(k) and the general standards applicable to other prospective voters. Subsection (a) of Article 5.08 provides that, for voting purposes, "residence" shall mean "domi-cile," and defines domicile as "one's home and fixed place of habitation to which he intends to return after any temporary absence." Further, subsection (b) of the same statute requires that residence "be determined [by] the common law rules as enunciated by the courts of this state," unless those rules are in conflict with the statute. Texas courts hold that a necessary element of domicile is a "freely exercised intention of remaining [at a place] *permanently or for an indefinite time*" [emphasis added]. Harrison v. Chesshir, 316 S.W.2d 909 (Tex. Civ.App.—Amarillo 1958); rev'd on other grounds, 159 Tex. 359, 320 S.W.2d 814 (1959). *See also* Snyder v. Pitts, 150 Tex. 407, 241 S.W.2d 136 (1951); Wilson v. Wilson, 189 S.W.2d 212 (Tex. Civ.App.—Ft. Worth 1945); Stone v. Phillips, 171 S.W.2d 156 (Tex.Civ.App. —Amarillo 1943), aff'd, 142 Tex. 216, 176 S.W.2d 932 (1944).[5] For the purposes of this appeal, we assume without deciding that the same definition of domicile is applied to both students and other prospective voters.

It does not follow, however, that because Article 5.08(k) applies the same substantive standard to students as is applied to other prospective voters, the statute does not create a distinct class, for purposes of equal protection analysis. If subsection (k) merely restates the rules applicable to other voters, one may well wonder why it exists separately and, indeed, why the requirement of intent to remain in the college community indefinitely after graduation, was

4. Moreover, the instant case does not squarely present a challenge to the manner in which Texas defines residence for voting purposes, and this opinion is therefore not to be interpreted as adjudicating the validity of Texas' substantive rules for determining voting residence. We recognize, however, that at least two three-judge district courts have held similar definitions of voting residence to be unconstitutional. *See* Ramey v. Rockefeller, E.D.N.Y.1972, 348 F. Supp. 780; Newburger v. Peterson, D. N.H.1972, 344 F.Supp. 559.

5. Appellants urge this court to abstain, pending a construction of Article 5.08(k) by the Texas courts. In appellants' view, the word "indefinite" is ambiguous, meaning either "permanent" or "subject to change at any time." From the Texas cases cited above, however, it appears that the Texas courts use "indefinite" and "permanent" interchangeably in this context. Thus, the meaning of Article 5.08(k) seems tolerably clear: before a student may vote at the place where he lives while attending school, he must have a present intention of remaining there "permanently" after he ceases to be a student.

added by amendment in 1967. Acts 1967, 60th Leg., p. 1879, ch. 873, § 21, effective August 28, 1967. The answer is apparent. Although it may apply the same *substantive* standard that applies to other voters, subsection (k) applies it to students in a different way. By its terms it creates a presumption that students are not domiciliaries of the places they live while attending school. Of course, the presumption is rebuttable; but unless a student carries the burden of persuading the voter registrar that he is in fact a domiciliary of the place where he resides for the better part of each year,[6] he is not permitted to vote there and is consequently denied an opportunity to participate in elections which may have considerably more impact on his life than do those in the area where he resided before becoming a student. Other prospective voters, on the other hand, are not subject to this presumption of nonresidency or to the attendant burden of overcoming it.[7]

■■ The right to vote is a fundamental right preservative of other basic rights. Reynolds v. Sims, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964). A state statute that restricts the exercise of such a fundamental right *is invalid under the Equal Protection Clause, unless it can be shown that the burden imposed is necessary to promote a compelling state interest. Dunn, supra*; Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1972).

Appellants, however, contend that no such showing is necessary in the instant case, because in their view the Supreme Court approved this rebuttable presumption of nonresidency in *Carrington, supra*. There the Court invalidated a provision of the Texas Constitution that absolutely prohibited nonresident servicemen who had moved to Texas from ever acquiring a voting residence in the state for the duration of their military service. The Court observed that only members of the armed forces were subject to a conclusive presumption of nonresidency, although other groups—such as students and inmates of public institutions (citing an earlier version of Article 5.-08)—which presented "specialized problems in determining residence," were "given at least an opportunity to show the election officials that they are bona fide residents." 380 U.S. at 95, 85 S.Ct. at 779–780. Relying on this observation, appellants argue that *Carrington* approved the instant treatment of students as presumptive nonresidents because the Texas presumption of nonresidency is rebuttable, giving students "at least an opportunity" to establish their claims of domicile.

This position reflects a misunderstanding of *Carrington*. First, because the requirement of intent to remain in the

---

6. Although there is a wide variance in the quantum of proof demanded of students by voter registrars, the required showing can be quite extensive, as illustrated by the following inquiries taken from a questionnaire administered to students by the Waller County, Texas registrar:

   Do you intend to reside in Waller County indefinitely? How long have you considered yourself to be a bona fide resident of Waller County? What do you plan to do when you finish your college education? Do you have a job or position in Waller County? Own any home or other property in Waller County? Have an automobile registered in Waller County? Have a telephone listed in Waller County?

   Belong to a church, club, or some Waller County organization other than college related?
   *See* Wilson v. Symm, 341 F.Supp. 8 at 11 n. 2 S.D.Tex.1972.

7. Pursuant to Article 5.21 of the Texas Election Code, if the registrar "has reason to believe" that an applicant has made a false statement on an application for voter registration, the registrar "shall require proof of such statement." Since this requirement of proof arises only when the registrar has reason to doubt a statement on the application, it cannot be said that Article 5.21 imposes a burden of proving domicile upon all prospective voters.

college community indefinitely did not become a part of Article 5.08(k) until two years after *Carrington* was decided, nothing in *Carrington* can be taken as expressly approving the statute in its present form. Secondly, and more importantly, the instant case presents an altogether different question from that in *Carrington*. Here, at issue is the validity of a scheme whereby some prospective voters are subject to a rebuttable presumption of nonresidency, while others are subject to no such presumption. *Carrington*, on the other hand, involved a challenge to a scheme whereby one group was conclusively disenfranchised, while all other prospective voters were given "at least an opportunity" to establish their claims of residence. That some members of the favored group were subject to rebuttable presumptions of nonresidency while other members of the favored group were not, was immaterial to the question in *Carrington*. Rather, the determining factor there was the *conclusiveness* of the presumption with regard to servicemen. 380 U.S. at 96, 85 S.Ct. at 780. The Court in *Carrington* did not purport to evaluate the distinctions that Texas had made as between members of the favored class; its reference to the "opportunity" given to students (and other groups that presented "specialized problems in determining residence") to prove their claims of residence should be seen only in contrast to the total disenfranchisement of servicemen, not as tacit approval of a rebuttable presumption of nonresidency as applied to students. It is our view that *Carrington* does not foreclose a challenge to the instant statute; therefore we turn to the question whether Article 5.08(k) is necessary to promote a compelling state interest.

██ ██ Appellants suggest only that the statute "preserve[s] the purity of the ballot," an interest expressed in Article 6, § 4 of the Texas Constitution Vernon's Ann.St. While, as we have pointed out above, Texas has a legitimate interest in limiting the franchise to bona fide residents and in guarding against fraudulent evasions of valid residence requirements, we find it difficult to believe that a presumption that students are not residents of their college communities is *necessary* to promote those goals. As the Supreme Court recognized in *Dunn, supra,* a voter registration system based on reasonable durational residency requirements adequately protects the state's interest in the "purity of the ballot." 92 S.Ct. at 1005. Indeed, one of the original named defendants in the instant suit, former Texas Secretary of State Robert Bullock, testifying as the state's chief election officer, stated unequivocally that Article 5.-08(k) created a "special classification" that served no purpose other than to discourage students from voting. In short, appellants have not demonstrated that treating persons as presumptive nonresidents simply because they are students is necessary to promote any compelling state interest. Accordingly, the judgment of the court below is affirmed.