# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 4, 2004

The Honorable Rodney Ellis
Chair, Government Organization Committee
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. GA-0141

Re: Residency requirements for voting in an election in Texas (RQ-0157-GA)

Dear Senator Ellis:

You ask three questions regarding voter eligibility and residency requirements for voting in Texas, particularly with respect to students enrolled in schools of higher education.

## I.   Background

In your letter requesting an official opinion from this office, you state that your request is prompted by statements made by the Criminal District Attorney of Waller County, who you say has "declared that students at Prairie View A&M University may not meet residency requirements sufficient to vote in local elections."[1] Citing *Symm v. United States*, 439 U.S. 1105 (1979), you note that the United States Supreme Court rejected an appeal by a former Waller County Tax Assessor-Collector, who was also the voter registrar, thus affirming the decision of a three-judge panel that enjoined the Tax Assessor-Collector from refusing to register college dormitory residents enrolled at Prairie View A&M University. The current Tax Assessor-Collector of Waller County, who is also the voter registrar, has publicly declared that she will seek guidance from and follow the directives of the Office of the Secretary of State, who is the state's chief election officer, on these matters, rather than rely on advice from the local prosecutor. *See* Terry Kliewer, *Prairie View Voting Issue to be Appealed*, HOUSTON CHRONICLE, Dec. 24, 2003, at 19A. You ask for an opinion from this office about eligibility for voting in Texas, residency requirements for voter registration, and the authority of local prosecutors to prevent local voter registrars from registering voters.

---

[1]Letter from Honorable Rodney Ellis, Chair, Government Organization Committee, Texas State Senate, to Honorable Greg Abbott, Texas Attorney General at 1 (Dec. 30, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

## II.     Analysis

### A.     Legal Requirements for Eligibility to Vote

You first ask: "What are the legal requirements to vote in an election in Texas?" Request Letter, *supra* note 1, at 2.

The Texas Constitution provides that every person who is both a citizen of the United States and a resident of Texas shall be deemed a qualified voter, provided, however, that the person is registered to vote and does not fall within any of a specific set of disqualifications. *See* TEX. CONST. art. VI, § 2(a). Persons so disqualified are those under 18 years of age; those who have been determined mentally incompetent by a court, subject to such exceptions as the legislature may enact; and those convicted of any felony, again subject to such exceptions as the legislature may enact. *See id.* art. VI, § 1(a). Additionally, the legislature is directed to "enact laws to exclude from the right of suffrage persons who have been convicted of bribery, perjury, forgery, or other high crimes." *Id.* art. VI, § 1(b). The legislature expressly is directed to "make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box," as well as to "provide by law for the registration of all voters." *Id.* art. VI, § 4.

Statutory eligibility requirements have been codified in the Election Code, which provides that:

> Except as otherwise provided by law, to be eligible to vote in an election in this state, a person must:
>
> (1) be a qualified voter as defined by Section 11.002 on the day the person offers to vote;
>
> (2) be a resident of the territory covered by the election for the office or measure on which the person desires to vote; and
>
> (3) satisfy all other requirements for voting prescribed by law for the particular election.

TEX. ELEC. CODE ANN. § 11.001 (Vernon 2003). Section 11.002 defines "qualified voter":

> In this code, "qualified voter" means a person who:
>
> (1) is 18 years of age or older;
>
> (2) is a United States citizen;
>
> (3) has not been determined mentally incompetent by a final judgment of a court;

(4) has not been finally convicted of a felony or, if so convicted, has:

> (A) fully discharged the person's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or

> (B) been pardoned or otherwise released from the resulting disability to vote;

(5) is a resident of this state; and

(6) is a registered voter.

*Id.* § 11.002.

In order to be a resident of the state, one must satisfy the statutory definition of "residence." Section 1.015 of the Election Code defines "residence":

> (a) In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.

> (b) Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.

> (c) A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only.

> (d) A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home.

> (e) A person who is an inmate in a penal institution or who is an involuntary inmate in a hospital or eleemosynary institution does not, while an inmate, acquire residence at the place where the institution is located.

*Id.* § 1.015.

In order to register to vote, one must file an application with the voter registrar of the county in which the applicant desires to vote. *Id.* § 13.002. In order to file, one must satisfy the statutory eligibility requirements for registration, which track the definition of "qualified voter" found in

section 11.002 with the additional requirement that the person "be a resident of the county in which application for registration is made." *Id.* § 13.001(a)(5). Thus, a person who complies with and satisfies the requirements of sections 1.015, 11.001, 11.002, 13.001, and 13.002 of the Election Code is an "eligible voter." *See id.* §§ 1.015, 11.001-.002, 13.001-.002 (Vernon 2003 & Supp. 2004).

### B.     Residency Requirements for Voter Registration and *United States v. Texas*

In your second question you ask: "What is the law with regard to residency in the State of Texas as it relates to voter registration?" Request Letter, *supra* note 1, at 2.

As noted above, in order to register to vote, one must be a "resident" of the county in which one desires to vote. Residence for purposes both of registration and voting is defined to mean "domicile," *i.e.*, "one's home and fixed place of habitation to which one intends to return after any temporary absence." Tex. Elec. Code Ann. § 1.015(a) (Vernon 2003). Residence must be determined in accordance with the common-law rules, as enunciated by the courts of this state, unless the code provides otherwise. *See id.* § 1.015(b). A person does not lose residence by leaving his home to go to another place for temporary purposes only; nor does a person acquire a residence in a place to which he has come for temporary purposes only and without the intention of making that place his home. *See id.* § 1.015(c)-(d).

In the leading Texas Supreme Court case of *Mills v. Bartlett*, 377 S.W.2d 636 (Tex. 1964), the court declared that the meaning of the term "residence" for voting purposes

> depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual. Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile. . . . Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined. There is no specific length of time for the bodily presence to continue.

*Id.* at 637 (citations omitted). *See Slusher v. Streater*, 896 S.W.2d 239, 243 (Tex. App.–Houston [1st Dist.] 1995, no writ); *Alvarez v. Espinoza*, 844 S.W.2d 238, 247 (Tex. App.–San Antonio 1992, writ dism'd w.o.j.); *Guerra v. Pena*, 406 S.W.2d 769, 776 (Tex. Civ. App.–San Antonio 1966, no writ); *McBeth v. Streib*, 96 S.W.2d 992 (Tex. Civ. App.–San Antonio 1936, no writ); *see also* Tex. Att'y Gen. Op. Nos. JC-0520 (2002), JM-611 (1986), JM-231 (1984).

Prior to *Whatley v. Clark*, 482 F.2d 1230 (5th Cir. 1973), students in Texas were presumed by statute to have a domicile at the residence of their parents, not where they were enrolled at institutions of higher education. *Whatley* struck down the statutory presumption in former article 5.08(k) of the Election Code providing that "'a student in a school, college, or university' shall not be considered to have acquired a voting residence at the place where he lives while attending school 'unless he intends to remain there and to make that place his home indefinitely after he ceases to be

a student.'" *Whatley*, 482 F.2d at 1231 (quoting former article 5.08(k) of the Election Code, *see* Act of May 19, 1967, 60th Leg., R. S., ch. 723, § 21, sec. 40 (art. 5.08), 1967 Tex. Gen. Laws 1858, 1879-80, *repealed by* Act of May 13, 1985, 69th Leg., R. S., ch. 211, § 1, sec. 1.015, 1985 Tex. Gen. Laws 802, 807) (substantive recodification of Texas Election Code, repealing former article 5.08 and enacting section 1.015). The court noted that the statutory presumption illegally treated student voters differently than non-student voters:

> By its terms it creates a presumption that students are not domiciliaries of the places they live while attending school. Of course, the presumption is rebuttable; but unless a student carries the burden of persuading the voter registrar that he is in fact a domiciliary of the place where he resides for the better part of each year, he is not permitted to vote there and is consequently denied an opportunity to participate in elections which may have considerably more impact on his life than do those in the area where he resided before becoming a student. Other prospective voters, on the other hand, are not subject to this presumption of nonresidency or to the attendant burden of overcoming it.

*Whatley*, 482 F.2d at 1233 (footnotes omitted). The court declared that the presumption violated the Equal Protection Clause of the 14th Amendment and struck down the provision.

Under current law, the determination regarding "residence" thus involves both physical presence and current intention of the applicant; if a student, like any other applicant, satisfies the requirements of section 1.015, that student is a "resident" of the county in which he seeks to register. The intention of the voter registration applicant is crucial to a proper determination of residence, and every person is strongly presumed to have "the right and privilege of fixing his residence according to his own desires." *McBeth*, 96 S.W.2d at 995. For example, let us assume that two students, Student A and Student B, live in the same college dormitory. Student A, who is living in the dormitory and is therefore physically present for purposes of voter registration yet intends his residence to remain the same as that of his parents, can permissibly register to vote in the county of his parent's residence. *See, e.g.*, *Alvarez*, 844 S.W.2d at 247 (by temporarily moving to Austin to attend school at the University of Texas at Austin, challenged voter did not lose his Frio County residence or acquire residence for voting purposes in Travis County). On the other hand, Student B, who is living in the same dormitory as Student A yet who intends that the dormitory be his residence for purposes of voter registration, can permissibly register to vote in the county where his dormitory is located. *See, e.g.*, *Whatley*, 482 F.2d 1230 (student who was physically present in Denton County and intended to claim Denton County as his residence for purposes of voter registration lost residence in the county where his parents resided and acquired residence in Denton County). And the mere fact that an applicant claims a post office box as an address or that many applicants claim the same post office box as an address is not dispositive regarding the determination of residence. Indeed, depending upon the facts in each case, it might not even be relevant. *See, e.g.*, *Speights v. Willis*, 88 S.W.3d 817 (Tex. App.–Beaumont 2002, no pet.) (voters who were physically present and intended county to be residence for purposes of voter registration, yet who claimed post

office box numbers as addresses, satisfied statutory voter registration application requirements and, thereby, residence requirement).

Without outlining all of the various fact situations that the courts have addressed in determining whether a voter is a "resident," we can say that all applicants for registration, including students, must be subject equally to whatever presumptions or restrictions are imposed by law. *See Dunn v. Blumstein*, 405 U.S. 330 (1972). To illustrate the sorts of factors and practices that cannot be employed to determine "residence," we examine the federal three-judge panel's injunction in *United States v. Texas*, 445 F. Supp. 1245 (S.D. Tex. 1978), *aff'd, Symm v. United States*, 439 U.S. 1105 (1979) (hereinafter *Texas*), a case involving the very county that is the focus of your concern – Waller County. Though in a brief submitted to this office the Criminal District Attorney of Waller County seems to assert that the case only prohibited the use of a certain questionnaire in determining "residence" for purposes of voter registration,[2] the injunction issued in the case makes it clear beyond cavil that the court concluded that a variety of practices undertaken by the voter registrar violated the United States Constitution.

In *Texas*, a federal three-judge panel enjoined the Waller County Tax Assessor-Collector, who was the voter registrar, from refusing to register to vote students enrolled at Prairie View A&M University. Specifically, the panel enjoined the registrar from engaging in a variety of practices that the panel deemed violated the 26th Amendment to the United States Constitution, which provides that no right of citizens who are 18 years old or older to vote shall be denied or abridged on account of age.[3] *See* U.S. CONST. amend. XXVI, § 1.

The panel ordered that, *inter alia*, college students of Waller County must be registered and allowed to vote on the same basis and by application of the same standards and procedures as non-students, without reference to whether such students had dormitory addresses, whether or not they resided in Waller County prior to attending school, and whether or not they planned to leave Waller County upon graduation. *See United States v. Texas*, Civil Action No. 76-H-1681, Injunction Decree, ¶ 1 (S.D. Tex. 1978) (on file with Opinion Committee). The panel acknowledged that the registrar had the authority under the Election Code to make a factual determination as to whether each applicant to vote was a bona fide resident of Waller County; however, in making this factual determination, the panel declared that the registrar could not find that a person was a non-resident of Waller County for any of the following reasons:

    A. That such person resides in a dormitory at Prairie View A&M University;

    B. That such person owns no property in Waller County;

    C. That such person is a student at Prairie View University;

---

[2]Brief from Honorable Oliver S. Kitzman, Criminal District Attorney, Waller County, to Nancy Fuller, Chair, Opinion Committee, Office of the Attorney General at 2-6 (Jan. 23, 2004) (on file with the Opinion Committee).

[3]The complete text of the injunctive order of the panel is set forth in Appendix A of this opinion.

           D. That such applicant has no employment or promise of employment in Waller County;

           E. That such applicant previously lived outside Waller County, or may live outside Waller County after his graduation;

           F. That such person visits the home of his parents, or some other place during holidays and school vacations.

*Id.* at ¶ 2.

The panel required that, if the registrar made a finding that a person was not a bona fide resident of Waller County, the determination must be made on the basis of tangible evidence, consisting of facts or factors other than the six factors listed above. *See id.* In addition, in the event that the registrar made a determination that any person who claims to be a resident of Waller County, and who had a Prairie View A&M University address, was not a bona fide resident of Waller County, the registrar must make a written record of the precise, exact tangible evidence upon which he relied in making his determination of non-residency. *See id.* All records of the type described in the previous sentence were required to be kept in legible form and in a single file in the Waller County Registrar's office, where such records could be inspected by the plaintiff in the cause or any other person having a legitimate interest in the examination of such records. Such records were required to be maintained for a period of five years after originally made. *See id.*

Additionally, students of Waller County were not to be subjected to the presumption contained in former article 5.08(k) of the Election Code or to any other presumption with regard to their voting residence. *See id.* ¶ 3. The registrar was ordered immediately to cease using the residence standard for students, which had been implemented by means of a questionnaire, to terminate the use of the questionnaire, and to henceforth register students on the basis of the information contained in the state-approved registration form, as was done elsewhere in Texas, unless the registrar had tangible, recordable evidence (consistent with Paragraph 2 of the decree) that such applicant was not a bona fide resident of Waller County. *See id.* ¶ 4. And the registrar was enjoined from subjecting Prairie View A&M students to any particular or discriminatory procedure not applied to non-students on a regular basis, such as, for example, causing students to visit his office and submitting students orally to the questioning previously contained in the questionnaire discussed in the court's Memorandum Opinion. *See id.*

We stress that the United States Supreme Court affirmed the three-judge panel's judgment in *Symm v. United States*, 439 U.S. 1105 (1979). Thus, clearly, in light of *Whatley* and *Texas*, students in Texas may no longer be subjected, whether by statute or by practice, to any presumption with respect to "residence" not also applied to all other voters in Texas.

C.    **Administrative Procedure Governing Applications for Registration to Vote and the Authority of the District Attorney**

With your third question, you ask about the authority of the local prosecutor to prevent someone from registering to vote or to prevent the voter registrar from acting on that application:

> Does the [Criminal] District Attorney have the jurisdiction or authority to prevent local election officials from refusing to allow a person to register to vote in the county? In other words, can the [Criminal] District Attorney preemptively prevent someone from registering to vote in an election or must the [Criminal] District Attorney bring an action against the individual after an election has taken place contesting unlawful voter registration?

Request Letter, *supra* note 1, at 2.

1.    *Local Prosecutor's Authority Regarding Voter Registration Decisions*

The voter registrar is authorized by the Election Code to conduct an administrative procedure to determine and possibly challenge the eligibility of an applicant for registration to vote, subject to judicial review. *See* TEX. ELEC. CODE ANN. §§ 13.001-.146 (Vernon 2003 & Supp. 2004), 17.001-.008 (Vernon 2003). The Election Code also establishes an administrative procedure cancelling, by the registrar's initiative or that of another registered voter, a voter registration application that already has been approved, if the voter is no longer eligible. *Id.* §§ 16.001-.095 (Vernon 2003 & Supp. 2004). Adverse decisions rendered under chapter 16 are also subject to judicial review. *Id.* §§ 17.001-.008 (Vernon 2003). These provisions grant no role to a local prosecutor. Thus, we have found no statute granting local prosecutors the preemptive authority to prevent a person from filing an application to register to vote or the voter registrar from acting on that application. Local prosecutors do, however, have express authority to prosecute a person who knowingly makes a false statement on an application for voter registration.

2.    *Local Prosecutor's Authority to Prosecute Certain Criminal Offenses Involving Voter Fraud*

Section 13.007 of the Election Code provides:

> (a) A person commits an offense if the person knowingly makes a false statement or requests, commands, or attempts to induce another person to make a false statement on a registration application.

> (b) An offense under this section is a Class B misdemeanor.

> (c) For purposes of this code, an offense under this section is considered to be perjury, but may be prosecuted only under this section.

*Id.* § 13.007.[4] An application for voter registration must contain substantially more than just a declaration of residence. Subsection (c) of section 13.002 sets forth the information that must be included on an application for voter registration:

> (c) A registration application must include:
>
> > (1) the applicant's first name, middle name, if any, last name, and former name, if any;
>
> > (2) the month, day, and year of the applicant's birth;
>
> > (3) a statement that the applicant is a United States citizen;
>
> > (4) a statement that the applicant is a resident of the county;
>
> > (5) a statement that the applicant has not been determined mentally incompetent by a final judgment of a court;
>
> > (6) a statement that the applicant has not been finally convicted of a felony or that the applicant is a felon eligible for registration under Section 13.001;
>
> > (7) the applicant's residence address or, if the residence has no address, the address at which the applicant receives mail and a concise description of the location of the applicant's residence;
>
> > (8) the following information:
>
> > > (A) the applicant's Texas driver's license number or the number of a personal identification card issued by the Department of Public Safety;
>
> > > (B) if the applicant has not been issued a number described by Paragraph (A), the last four digits of the applicant's social security number; or

---

[4]The offense of perjury is set forth in chapter 37 of the Penal Code. *See* TEX. PEN. CODE ANN. §§ 37.01-.13 (Vernon 2003 & Supp. 2004).

> (C) a statement by the applicant that the applicant has not been issued a number described by Paragraph (A) or (B);
>
> (9) if the application is made by an agent, a statement of the agent's relationship to the applicant; and
>
> (10) the city and county in which the applicant formerly resided.

*Id.* § 13.002(c) (Vernon Supp. 2004). Thus, knowingly providing any false information in answer to the above ten items of information violates section 13.007 of the Election Code.

Prosecution under section 13.007, by its terms, is not limited only to those instances in which a person already has cast a vote. Rather, the section creates an offense that may be prosecuted at any time its elements are met, whether before or after an election, subject of course to applicable statutes of limitations. We emphasize that it is not a criminal offense in this state if an applicant for voter registration believes, however mistakenly, that the applicant is a resident of the county in which the applicant seeks to vote. *But see id.* § 64.012 (voting or attempting to vote in an election when voter knows that the voter is ineligible to vote is criminal offense). However, knowingly making a false statement on an application for voter registration is a criminal offense.

Additionally, we note that chapter 273 of the Election Code confers general authority on both local prosecutors and the attorney general to investigate alleged criminal conduct "in connection with" an election. Section 273.001 provides in pertinent part that:

> If two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection with the election to the county or district attorney having jurisdiction in that territory, the county or district attorney shall investigate the allegations. If the election covers territory in more than one county, the voters may present the affidavits to the attorney general, and the attorney general shall investigate the allegations.

*Id.* § 273.001(a). Moreover, the local prosecutor and the attorney general have authority to conduct such an investigation in the absence of affidavits:

> A district or county attorney having jurisdiction or the attorney general may conduct an investigation on the officer's own initiative to determine if criminal conduct occurred in connection with an election.

*Id.* § 273.001(b). In this specific instance, the Criminal District Attorney of Waller County "has all the powers, duties, and privileges in Waller County that are conferred by law on county and district attorneys in the various counties and districts." TEX. GOV'T CODE ANN. § 44.337 (Vernon Supp.

2004). Thus, the Criminal District Attorney of Waller County is conferred authority by Election Code chapter 273 to investigate, on his own initiative, whether criminal conduct occurred "in connection with an election." TEX. ELEC. CODE ANN. § 273.001(b) (Vernon Supp. 2004).

Therefore, in answer to your third question, we conclude that local prosecutors are conferred no authority to prevent someone from registering to vote or to prevent voter registrars from acting on voter registration applications. We further conclude that local prosecutors may seek to investigate and prosecute possible offenses under section 13.007 of the Election Code any time that credible evidence of such fraud is brought to their attention or complaints are filed with their offices; local prosecutors are conferred general authority to investigate whether criminal conduct has occurred "in connection with an election" under chapter 273 of the Election Code. *Id.*

## S U M M A R Y

A person who complies with and satisfies the requirements of sections 1.015, 11.001, 11.002, 13.001, and 13.002 of the Texas Election Code is an "eligible voter". *See* TEX. ELEC. CODE ANN. §§ 1.015, 11.001-.002, 13.001-.002 (Vernon 2003 & Supp. 2004).

The meaning of "residence" for purposes of voting and voter registration is governed by section 1.015 of the Texas Election Code. "Residence" is defined to mean "domicile," *i.e.*, one's home and fixed place of habitation to which one intends to return after any temporary absence. *Id.* § 1.015(a) (Vernon 2003). Residence must be determined in accordance with the common-law rules, as enunciated by the courts of this state, unless the code provides otherwise. *See id.* § 1.015(b). A person does not lose his residence by leaving his home to go to another place for temporary purposes only; nor does a person acquire a residence in a place to which he has come for temporary purposes only and without the intention of making that place his home. *See id.* § 1.015(c). Both bodily presence and current intention on the part of the applicant or voter are necessary to establish residence.

The intention of the voter registration applicant is crucial to a proper determination of residence, and every person is strongly presumed to have "the right and privilege of fixing his residence according to his own desires." *McBeth v. Streib*, 96 S.W.2d 992, 995 (Tex. Civ. App.–San Antonio 1936, no writ). For example, one student who is living in a dormitory, and is therefore physically present for purposes of voter registration, yet who intends his residence to remain the same as that of his parents, can permissibly register to vote in the county of his parent's residence. On the other hand, another student living in the same dormitory who intends that the dormitory be his residence for purposes of voter registration, can permissibly register to vote in the county where the dormitory is located. And the mere fact that an applicant claims a post office box as an address or that many applicants claim the same post office box as an address is not dispositive regarding the determination of residence.

Chapter 13 of the Texas Election Code sets forth a detailed administrative procedure to be conducted by the voter registrar governing the submission and approval of voter registration applications. Chapter 16 of the Texas Election Code sets forth a detailed administrative procedure to be conducted by the voter registrar governing the cancellation, whether through the initiative of

the registrar or any registered voter, of voter registration applications already approved. Chapter 17 of the Texas Election Code provides for judicial review of any administrative decision made under those chapters. No section of any of these chapters affords an official role to local prosecutors. Therefore, local prosecutors have no authority to prevent any voter registrar from performing the registrar's duties as provided by law. However, local prosecutors are authorized to investigate and prosecute whenever credible evidence is brought to their attention, or a complaint is filed regarding alleged violations of section 13.007 of the Texas Election Code, which makes it a criminal offense to submit false or fraudulent information on a voter registration application.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Jim Moellinger
Assistant Attorney General

**Appendix A**

The injunction decree issued in *United States v. State of Texas* ordered the following:

1. College students of Waller County shall be registered and allowed to vote on the same basis and by application of the same standards and procedures as non-students, without reference to whether such students have dormitory addresses, whether or not they resided in Waller County prior to attending school, and whether or not they plan to leave Waller County upon graduation.

2. The Court recognizes that LeRoy Symm has the right under the Texas Election Code to make a factual determination as to whether or not each applicant to vote is a bona fide resident of Waller County; however, in making this factual determination, LeRoy Simm shall not find that a person is a non-resident of Waller County for any of the following reasons:

    A. That such person resides in a dormitory at Prairie View A&M University;

    B. That such person owns no property in Waller County;

    C. That such person is a student at Prairie View University;

    D. That such applicant has no employment or promise of employment in Waller County;

    E. That such applicant previously lived outside Waller County, or may live outside Waller County after his graduation.

    F. That such person visits the home of his parents, or some other place during holidays and school vacations.

In this connection, if LeRoy Symm, in the performance of his duties, determines that he is to make a finding that a person is a non-resident, or not a bona fide resident of Waller County, such determination shall be made on the basis of tangible evidence, consisting of facts or factors other than the six factors listed above. In addition, in the event LeRoy Symm makes a determination that any person who claims to be a resident of Waller County, and who has a Prairie View University address, is not a bona fide resident of Waller County, Mr. Symm shall make a written record of the precise, exact tangible evidence upon which he relied in making his determination of non-residency. All records of the type described in the previous sentence shall be kept in legible form and in a single file in the Waller County Registrar's office where such records can be inspected by the plaintiff in this cause or any other person having a legitimate interest in the examination of such records. Such records shall be maintained for a period of five (5) years after originally made.

No additional inquiry or information shall be required solely because the application form promulgated by the Secretary of State of Texas contains different permanent and mailing addresses or states that the applicant is registered in another Texas county.

3. Students of Waller County shall not be subjected to the presumption contained in [art.] 5.08(k) of the Texas Election Code, or to any other presumption with regard to their voting residence.

4. The Tax Assessor, LeRoy Symm, shall immediately cease the utilization of the residence standard for students which has been implemented by means of a questionnaire, shall terminate the use of the questionnaire, and shall henceforth register students on the basis of the information contained in the state-approved registration form, as is done elsewhere in Texas, unless LeRoy Symm has tangible, recordable evidence (consistent with Paragraph 2 above of this injunctive decree) that such applicant is not a bona fide resident of Waller County. Defendant is enjoined from subjecting Prairie View students to any particular or discriminatory procedure not applied to non-students on a regular basis, such as for example, causing students to visit his office and submit students orally to the questioning previously contained in the questionnaire discussed in this Court's Memorandum Opinion.

5. The defendant Tax Assessor of Waller County shall schedule registration and other election procedures pursuant to a time table which will allow students who are bona fide residents of Waller County to register and vote in the elections scheduled for May 6, 1978, and in subsequent elections. Adequate resources and personnel shall be employed by the defendant Tax Assessor, so as to avoid causing student applicants any significant or unusual inconvenience.

6. Defendant Symm may require that all applicable information requested on the application form promulgated by the Secretary of State of Texas be supplied by the applicant, and may refuse registration unless and until all such information is provided. In the event the application form is incomplete and registration is denied on such basis, defendant Symm shall promptly return such incomplete application to the applicant with notice of the reason registration is denied.

7. The entry of this order shall not preclude the State of Texas from altering its voter registration standards so long as said standards are applied on a uniform basis and do not discriminate on the basis of race or age. Any such alteration of uniform standards shall be applied in Waller County and elsewhere without further order of this Court.

8. No relief will be granted with respect to defendants, Mark White, and his successor, Steven C. Oaks, John L. Hill, the State of Texas, and Waller County. It is further ORDERED, ADJUDGED, and DECREED that LeRoy Symm recover nothing of or from Steven C. Oaks, Secretary of State of the State of Texas, on his cross-claim, and that the State of Texas, acting by and through John L. Hill, its Attorney General, have judgment against LeRoy Symm on its cross-claim ordering that LeRoy Symm obey Rule 004.30.05.313 of the Rules of the Secretary of State, and that he cease using the written questionnaire with reference to the registration of voters in Waller County.